# IN THE SUPREME COURT OF IOWA

No. 80 / 04–1655

Filed August 29, 2008

**PAMELA SUE HOOK,**

   Appellee,

vs.

**CARL FREDERICK LIPPOLT** and the **STATE OF IOWA**,

   Appellants.

---

   Appeal from the Iowa District Court for Webster County, Ronald H. Schechtman, Judge.

   On interlocutory appeal from district court's ruling denying summary judgment to defendants, defendants argue plaintiff's claim was subject to dismissal on statute-of-limitations grounds. **REVERSED AND REMANDED.**

   Thomas J. Miller, Attorney General, and Joanne Moeller and Mark Hunacek, Assistant Attorneys General, for appellants.

   Tito Trevino of Trevino Law Offices, Fort Dodge, for appellee.

**TERNUS, Chief Justice.**

The appellee, Pamela Hook, brought suit for injuries she sustained in an automobile accident caused by appellant Carl Lippolt, who at the time of the accident was working as a volunteer for the Department of Human Services. After dismissing her initial lawsuit against Lippolt, Hook filed the present action against Lippolt and the State under the State Tort Claims Act. *See* Iowa Code ch. 669 (1999). Both defendants asserted a statute-of-limitations defense, and Lippolt claimed statutory immunity. *See id.* §§ 669.13, .24. The district court denied motions for summary judgment filed by the defendants, rejecting their argument that the plaintiff failed to file her claim with the state appeal board within the time limits established by the governing statute of limitations and rejecting Lippolt's claim of statutory immunity. On appeal, the defendants assert the district court erred because the plaintiff discovered her cause of action more than two years before filing her administrative claim, and therefore, this suit is barred. The defendants also argue there is no evidence to support the plaintiff's claim the defendants are equitably estopped from relying on the statute-of-limitations defense under the doctrine of fraudulent concealment. Finally, Lippolt contends he enjoys immunity from suit as a matter of law.

Upon our review of the record and the parties' arguments, we conclude there is no genuine issue of material fact with respect to Lippolt's entitlement to immunity, and therefore, his summary judgment motion on the plaintiff's negligence claim should have been granted. With respect to the parties' statute-of-limitations defense, we conclude as a matter of law the plaintiff's claim was untimely and the defendants are not equitably estopped from relying on the statute of limitations as a defense. The district court erred in failing to rule the plaintiff's

negligence claim is barred. Accordingly, we reverse the district court's ruling and remand this case for entry of judgment in favor of the defendants on the negligence count of plaintiff's petition.

### I. Background Facts and Proceedings.

On June 9, 2000, Pamela Hook and Carl Lippolt were involved in a car accident when Lippolt entered an intersection on a red light and struck Hook's vehicle. Hook was injured in the accident. Lippolt, who was seventy-eight years old, admitted from the beginning that the collision was his fault. Following the accident, Lippolt's personal automobile insurance carrier settled Hook's property damage claim, but no agreement could be reached on her personal injury claim. Consequently, on March 13, 2002, Hook filed suit against Lippolt.

In July 2002, more than two years after the accident, Hook propounded interrogatories to Lippolt. Lippolt revealed in his answers that, at the time of the accident, he was using his own vehicle to provide transportation services for a client of the Department of Human Services (DHS) as a volunteer for the department.[1] The preparation and service of Lippolt's interrogatory answers was the first time Hook, Hook's attorney, and Lippolt's attorney were aware of these facts. Thereafter, Lippolt was permitted to amend his answer to assert an immunity defense under chapter 669. *See id.* § 669.24 (providing for immunity from personal liability for persons performing voluntary services for a state agency). Lippolt was also allowed to add an affirmative defense based on Hook's failure to submit her claim to the state appeal board within two years of the accident. *See id.* § 669.13 (requiring claim against state or state

---

[1]The plaintiff asked the following interrogatory: "State whether you were acting within the course and scope of any agency, employment, or service at the time of the collision and describe the type of relationship of the persons involved."

employee be first presented to state appeal board within two years of accrual or be "forever barred"). In July 2003, Hook filed a dismissal without prejudice of her lawsuit against Lippolt. She did not appeal the district court's ruling allowing Lippolt to assert the immunity and statute-of-limitations defenses.

Nearly three years after the accident, on June 3, 2003, Hook filed an administrative claim with the state appeal board seeking compensation for her personal injury. After six months passed with no response from the board, Hook withdrew her claim and commenced the current lawsuit against Lippolt and the State on January 27, 2004. *See id.* § 669.5 (stating that after six months with no response from the board, claimant may withdraw claim from board's consideration and file suit). Hook made two claims in her petition: (1) a negligence claim against both defendants for the damages she sustained in the June 9, 2000 accident; and (2) a fraudulent misrepresentation claim against Lippolt based on representations he made to the plaintiff from April 8, 2002, to May 21, 2003, in the first lawsuit. With respect to Hook's negligence claim, the defendants asserted a statute-of-limitations defense in their answers. Lippolt also claimed statutory immunity under section 669.24.

Lippolt filed a motion for partial summary judgment, seeking summary judgment on Hook's negligence claim. He asserted his immunity and statute-of-limitations defenses should be decided in his favor as a matter of law. The State subsequently filed its own motion for summary judgment based on the statute of limitations. The plaintiff also filed a motion for partial summary judgment claiming the statute of limitations had been tolled by the discovery rule and asking the court to rule as a matter of law that her administrative claim was timely filed.

Although Hook did not contest the fact that Lippolt's "personal assets [were immune] from attachment or execution to satisfy any judgment," she claimed he was a proper defendant for two reasons. Because the State would be required to defend and indemnify Lippolt under section 669.21, Hook reasoned that statute anticipates that even volunteers not personally liable are still proper parties in an action against the State. In addition, Hook asserted Lippolt's personal liability insurance policy was available to satisfy any judgment by virtue of section 669.20,[2] and therefore, it was necessary to include Lippolt as a defendant.

In ruling on these various motions, the district court concluded as a matter of law that the plaintiff had neither actual nor imputed knowledge of her cause of action more than two years prior to filing her administrative claim. Therefore, the court sustained the plaintiff's motion for partial summary judgment on the defendants' statute-of-limitations defense and overruled the defendants' summary judgment motions on this issue. With respect to the immunity issue, the district court ruled that Lippolt was not personally liable and section 669.20 did not make Lippolt's insurer liable. Although the court overruled Hook's motion for partial summary judgment on the insurance issue, the court denied, for unexplained reasons, Lippolt's motion for partial summary judgment on his immunity defense. We granted the defendants' application for interlocutory appeal to review the district court's summary judgment rulings.

---

[2]Iowa Code section 669.20 states in pertinent part: "Whenever a claim or suit against the state is covered by liability insurance, the provisions of the liability insurance policy on defense and settlement shall be applicable notwithstanding any inconsistent provisions of this chapter."

## II. Scope of Review.

Summary judgment rulings are reviewed for correction of errors of law. *Hallett Constr. Co. v. Meister,* 713 N.W.2d 225, 229 (Iowa 2006). "To obtain a grant of summary judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that party to a particular result under controlling law." *Interstate Power Co. v. Ins. Co. of N. Am.,* 603 N.W.2d 751, 756 (Iowa 1999).

## III. Lippolt's Immunity.

We begin our review by considering the district court's ruling denying Lippolt's motion for partial summary judgment on Hook's negligence claim based on Lippolt's immunity defense under section 669.24.

**A. Statutory Provisions.** At the time of the events giving rise to this lawsuit, chapter 669 required that "any claim as defined in this chapter" be submitted to the state appeal board for disposition. Iowa Code §§ 669.3, .5. Section 669.2(3) defines "claim" to include "[a]ny claim against an employee of the state for money only . . . on account of personal injury or death, caused by the negligent or wrongful act or omission of any state employee while acting within the scope of the employee's office or employment." *Id.* § 669.2(3)(*b*). An "employee of the state" is broadly defined to include

> agents . . . of the state or any state agency . . . and persons acting on behalf of the state or any state agency in any official capacity, temporarily or permanently in the service of the state of Iowa, *whether with or without compensation . . . .*

*Id.* § 669.2(4) (emphasis added). It is important to keep in mind that the term "employee" as used in chapter 669 includes unpaid volunteers as well as paid workers.

We turn now to the indemnity and immunity provisions of this statute. At the outset, it is helpful to note the distinction between a right to be defended and indemnified by the State and immunity—the absence of personal liability. *See Dickerson v. Mertz,* 547 N.W.2d 208, 213 (Iowa 1996) (referring to statute providing that state employees "are not personally liable" for certain claims as granting such employees immunity). Chapter 669's indemnity provision is found in section 669.21, which provides that the State will defend and indemnify "any employee" against claims falling within chapter 669, subject to exceptions not pertinent to this case. Iowa Code § 669.21.

Chapter 669 contains two immunity provisions, one covering all employees and one applicable to volunteers. *See id.* §§ 669.23, .24. All employees are granted immunity for exempted claims, i.e., claims that do not fall within the State Tort Claims Act. *See* Iowa Code § 669.23 ("Employees of the state are not personally liable for any claim which is exempted under section 669.14."); *see also id.* § 669.14 (exempting specified claims from the provisions of the State Tort Claims Act). Hook's claim is not exempted under section 669.14, so the immunity provided to employees by section 669.23 does not protect Lippolt from personal liability for Hook's damages.

Lippolt's immunity defense is based on section 669.24, which grants broader immunity to volunteers:

> A person who performs services for the state government or any agency or subdivision of state government and who does not receive compensation is not personally liable for a claim based upon an act or omission of the person performed in the discharge of the person's duties, except for acts or omissions which involve intentional misconduct or knowing violation of the law, or for a transaction from which the person derives an improper personal benefit. For purposes of this section,

"*compensation*" does not include payments to reimburse a person for expenses.

*Id.* § 669.24. It is the applicability of this provision that is at issue here.

**B. Parties' Contentions.** Although conceding Lippolt provided services to DHS without compensation, Hook seems to argue Lippolt cannot benefit from the immunity of section 669.24 due to a related statute governing DHS volunteers. Iowa Code section 217.13(3) states: "All volunteers registered with [DHS] and in compliance with departmental rules are considered state employees for purposes of chapter 669."[3] It appears the plaintiff contends that, if Lippolt is considered an *employee* for purposes of chapter 669, he would not enjoy the protection from personal liability provided by section 669.24 to *volunteers*. Lippolt responds that the legislature surely did not intend to deprive DHS volunteers of the immunity available to other state volunteers.

**C. Discussion.** We conclude Hook's argument rests on a faulty premise: that the terms "employee" and "volunteer" are mutually exclusive under chapter 669. As noted earlier, section 669.2(4) defines "employee" broadly to *include* volunteers. Consequently, the fact that Lippolt may be classified by section 217.13(3) as a state employee for purposes of chapter 669 does not preclude him from also qualifying as a volunteer for purposes of that chapter. We believe that, rather than intending to deprive DHS volunteers of immunity under section 669.24 by its enactment of section 217.13(3), the legislature intended to assume responsibility under chapter 669 for the torts of persons purporting to

---

[3]Hook does not assert there is any genuine issue of material fact with respect to whether Lippolt was registered with DHS and in compliance with departmental rules. Therefore we accept, as do the parties, that Lippolt satisfies the requirements of section 217.13(3) so as to qualify as a "state employee[] for purposes of chapter 669."

act for DHS only if such persons were registered with DHS and in compliance with departmental rules.

Hook argues that, even if Lippolt is immune under section 669.24, he may still be sued for negligence in this lawsuit. We disagree. Section 669.24 states that a volunteer "is not personally liable." *Id.* § 669.24. If Lippolt is not liable, there is no legal basis to support Hook's negligence suit against Lippolt. For the same reason, Hook's claim that she is entitled to sue Lippolt to reach his personal liability insurance must fail. The ability to sue an individual for damages depends not on the individual's purchase of insurance, but on his liability under the law, a liability Lippolt does not have.

As a final matter, Hook argues the legislature must have contemplated suit against immune tortfeasors because such tortfeasors are included within the defense and indemnity provisions of section 669.21, and therefore, she concludes, immune volunteers are subject to suit. To the extent Hook's initial premise is accurate, it does not support her conclusion. Ironically, this lawsuit illustrates why the legislature would extend a defense and indemnity to immune volunteers. Notwithstanding Lippolt's immunity from personal liability, he has been required to defend this action. Thus, he has benefited from section 669.21 under circumstances not inconsistent with his personal immunity from suit under section 669.24.

For the foregoing reasons, we conclude Lippolt was entitled to summary judgment on Hook's negligence claim based on his statutory immunity. We now discuss the defendants' statute-of-limitations defense.

## IV. Statute of Limitations—the Discovery Rule.

The governing statute of limitations is contained in Iowa Code section 669.13, which provides in relevant part:

> Every claim and suit permitted under this chapter shall be forever barred, unless within two years after such claim accrued, the claim is made in writing to the state appeal board under this chapter. The time to begin a suit under this chapter shall be extended for a period of six months from the date of mailing notice to the claimant by the state appeal board as to the final disposition of the claim or from the date of withdrawal of the claim from the state appeal board under section 669.5, if the time to begin suit would otherwise expire before the end of such period.
>
> . . . .
>
> This section is the only statute of limitations applicable to claims as defined in this chapter.

*Id.* § 669.13. We have previously held the discovery rule is applicable to a state tort claim under chapter 669. *See Callahan v. State*, 464 N.W.2d 268, 272 (Iowa 1990). Under the discovery rule, "the statute of limitations does not begin to run until the injured person has actual or imputed knowledge of all the elements of the cause of action." *Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985). With respect to imputed knowledge, we have said:

> In addition, the person is charged with knowing *on the date of the accident* what a reasonable investigation would have disclosed. The period of limitations is the outer time limit for making the investigation and bringing the action. *The period begins at the time the person is on inquiry notice*:
>
> > [L]imitations begin to run when a claimant gains knowledge sufficient to put [the claimant] on inquiry. As of that date, [the claimant] is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation. The beginning of limitations is not postponed until the end of an additional period deemed reasonable for making the investigation.

11

*Franzen*, 377 N.W.2d at 662 (quoting *Lutheran Hosp. v. Levy*, 482 A.2d 23, 27 (Md. Ct. Spec. App. 1984)) (emphasis added); *accord Kendall/Hunt Publ'g Co. v. Rowe*, 424 N.W.2d 235, 243 (Iowa 1988) ("[T]he limitations period begins when a claimant has knowledge sufficient to put that person on inquiry notice.").

Based on these principles, the initial step in our analysis is to determine whether the undisputed facts establish as a matter of law when Hook had actual knowledge of the elements of her claims against Lippolt and the State *or* when she knew enough to be charged with a duty to inquire. If we conclude Hook had enough knowledge to be charged with a duty to investigate more than two years prior to filing this suit, we must then examine whether, as a matter of law, a reasonably diligent investigation would have disclosed the elements of her claims. If a reasonably diligent investigation would have disclosed the elements of her claims against Lippolt and the State, she is charged with that knowledge as of the date her duty to investigate arose.

**A. Discovery of Claim Against Lippolt.** Although we have already determined that Lippolt has no personal liability for Hook's negligence claim, it is helpful to our analysis of the State's statute-of-limitations defense to begin with a review of Hook's discovery of her claim against Lippolt. It is undisputed that, on June 9, 2000, Hook knew the automobile she was driving was hit by a car driven by Lippolt when he entered an intersection against a red light. Hook also knew immediately that she was injured and that her car was damaged. Lippolt did not deny that he was at fault for the accident. There is no question under the undisputed facts in the record that Hook had actual knowledge of all the elements of her claim against Lippolt immediately after the June 9,

2000 accident, substantially more than two years before she filed her claim with the state appeal board on June 3, 2003.

It is true that Hook did not know within two years of the accident that Lippolt was acting as a state volunteer at the time of the collision. Knowledge of Lippolt's volunteer status was not required, however, in order to commence the statute of limitations because that fact was not an element of Hook's claim. *See Franzen*, 377 N.W.2d at 662 (requiring "actual or imputed knowledge of all the *elements* of the cause of action" (emphasis added)). Lippolt's volunteer status simply triggered special prerequisites for filing suit against Lippolt. Hook had the statutory two-year period to determine the appropriate legal channels through which to pursue her claim.

We conclude as a matter of law Hook's claim against Lippolt accrued on June 9, 2000. Because she did not file her administrative claim against Lippolt within two years, Hook's claim against Lippolt is barred unless Lippolt is equitably estopped from asserting the statute as a defense, a question we address later in this opinion.

**B. Discovery of Claim Against State.** As we have discussed, Hook had actual knowledge of her injury and that it was caused by Lippolt's negligence on the date of the accident. She did not have actual knowledge that the State was vicariously liable for Lippolt's conduct until more than two years later. The State claims, however, that Hook had imputed knowledge of that fact as of June 9, 2000, under the concept of inquiry notice, and consequently, the limitations period against the State commenced on the date of the accident.

The plaintiff does not dispute that she had actual knowledge of her claim against Lippolt immediately after the accident, but she disagrees that she was on inquiry notice of her claim against the State based upon

this knowledge. Hook claims she had no duty to pursue any investigation because she had no reason to "explore[] whether Lippolt was really liable" or to "question whether [Lippolt] had immunity." But the issue before us with respect to Hook's discovery of her claim against the State is not Lippolt's liability or his immunity. The pertinent issue is whether an injured person has a duty to investigate who might be liable for her injuries. It was the district court's failure to make this critical distinction—between Lippolt's claimed immunity and the State's liability—that led the district court to erroneously conclude Hook was not on inquiry notice. The district court reasoned that, until Hook had some basis to believe Lippolt was immune, she had no duty to investigate a possible vicarious liability claim against a third party.

We think Lippolt's immunity is a red herring and has little to do with an injured party's duty to undertake a reasonably diligent investigation of the nature and extent of her legal rights to recover for an injury. *See Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985) ("Once the injured party is put on notice, the burden is upon him to determine within the limitations period whether any party may be liable to him."); *see also Buechel v. Five Star Quality Care, Inc.*, 745 N.W.2d 732, 736 (Iowa 2008) ("Once a person is aware that a problem exists, the person has a duty to investigate."). Under many circumstances, a tortfeasor remains personally liable even though a third party might have vicarious liability, as in the situation of employee/employer or vehicle operator/vehicle owner. If a duty to investigate the existence of a vicariously liable defendant did not arise until the injured party discovered the tortfeasor's immunity, the statute of limitations would never commence against a vicariously liable defendant in cases in which the tortfeasor is not immune. We think an injured party who knows of

her injury and its cause must conduct a reasonable investigation of the nature and extent of her legal rights that includes inquiry into the identity of any vicariously liable parties. An injured party's duty to investigate the identity of persons liable for her injury is not a seriatim process that stops upon the discovery of one defendant and arises again only when that defendant's liability is questioned.

In a case brought under the Federal Tort Claims Act (FTCA), the Fourth Circuit Court of Appeals held plaintiffs who knew the injury to their decedent, the cause of the injury, and the identity of the tortfeasors, but not that the tortfeasors were federal employees, were on inquiry notice of their claim against the government, stating commencement of the statute of limitations under the FTCA "does not wait until a plaintiff is aware that an alleged tort-feasor is a federal employee." *Gould v. U.S. Dep't of Health & Human Servs.*, 905 F.2d 738, 745 (4th Cir. 1990). The court stated:

> Plaintiffs' construction of the limitations statute would obviate the necessity of due diligence, even when the injury and its cause are known and a minimum inquiry would have led plaintiffs to discover in a timely manner the employment status of the [tortfeasors]. This approach would remove incentives for the timely investigation and prompt presentation of claims and would enable a plaintiff to maintain a FTCA action against the government years after plaintiff's injury and its cause are well known if, for any reason, it escaped the plaintiff's attention—even absent reasonable investigation—that the alleged tort-feasor was a government agent acting within the scope of his employment. An open-ended rule would vitiate the very purpose of the statute of limitations.

*Id.* at 746.

A Maryland court reached a similar conclusion in *Conaway v. State*, 600 A.2d 1133 (Md. Ct. Spec. App. 1992). In *Conaway*, the plaintiff sued the state for allegedly negligent treatment he received while

a prisoner at a state institution. 600 A.2d at 1134. Although the plaintiff filed a timely claim against the state under the Maryland Tort Claims Act, he did not learn the identity of the private entity providing health care at the state prison—Frank Basil, Inc.—until the time for filing a claim had expired. *Id.* He then amended his complaint to assert a claim against Basil, but that claim was dismissed on statute-of-limitations grounds. *Id.* at 1134, 1142. The Maryland appeals court upheld Basil's dismissal, rejecting the plaintiff's argument his claim was saved by the discovery rule: "We hold that appellant was aware of the circumstances surrounding his claim no later than September 8, 1986, and that he had three years from that date to bring suit against the proper parties." *Id.* at 1141–42; *accord Brown v. Drake-Willock Int'l, Ltd.*, 530 N.W.2d 510, 513 (Mich. Ct. App. 1995) ("Our courts consistently have held that the statute of limitations is not tolled pending discovery of the identity of the parties where all the elements of the cause of action exist.").

Here, Hook knew she had been injured and knew who caused her injury. Therefore, she was on inquiry notice and had "a duty to make a reasonable investigation" to ascertain the exact parameters of her claim. *Kendall/Hunt Publ'g Co.*, 424 N.W.2d at 243–44. It cannot be disputed that, had Hook inquired to ascertain whether there were any entities or persons other than Lippolt that might be liable for her damages, she would have discovered Lippolt's volunteer status and the relationship between Lippolt and the State. Indeed, it took only one interrogatory propounded during discovery to reveal the State's vicarious liability.

In summary, Hook knew of her injuries and Lippolt's fault in causing those injuries on June 9, 2000. As of that date, the plaintiff had a duty to investigate the identity of any party that might be vicariously

liable for Lippolt's negligence. As a matter of law, a reasonably diligent inquiry would have led to discovery of the State's liability. Consequently, under the doctrine of inquiry notice, Hook is charged with knowledge of her claim against the State on June 9, 2000, and accordingly, her claim against the State accrued on that date. Because Hook filed her administrative claim nearly three years later, rather than within two years of its accrual as required by section 669.13, this lawsuit is barred unless the defendants are estopped from relying on their statute-of-limitations defense, an issue we now address.

### V. Fraudulent Concealment.

The plaintiff argues that, even if her administrative claim was not timely filed, the defendants are estopped from asserting the statute of limitations as a defense under the doctrine of fraudulent concealment. The district court did not address this issue, as it concluded Hook was not on inquiry notice. Because we have concluded the statute of limitations had expired as a matter of law prior to the commencement of this suit, we now consider whether the defendants are estopped from asserting the statute of limitations as a bar to this action.

To establish equitable estoppel, the plaintiff must prove by clear and convincing evidence:

> (1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice.

*Christy v. Miulli*, 692 N.W.2d 694, 702 (Iowa 2005) (quoting *Meier v. Alfa-Laval, Inc.*, 454 N.W.2d 576, 578–79 (Iowa 1990)); *accord Dierking v. Bellas Hess Superstore, Inc.*, 258 N.W.2d 312, 315 (Iowa 1977). "This doctrine is intended to prevent a party from benefiting from 'the

protection of a limitations statute when by his own fraud he has prevented the other party from seeking redress within the period of limitations.'" *Christy*, 692 N.W.2d at 702 (quoting *Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex. 1983)).

Hook claims "Lippolt, through his attorneys, made false representations or concealed the material fact that he was a state volunteer" at the time of the accident. "Conduct amounting to false representation or concealment needs to be deceptive or fraudulent." *Meier*, 454 N.W.2d at 580. To establish deceptive or fraudulent conduct, there must be proof the defendant acted "with the intent to mislead the injured party." *Id.*; *accord Dierking*, 258 N.W.2d at 316 (requiring proof defendant "knowingly took a position with the intention that it be acted upon"); *see also Bensman v. United States Forest Serv.*, 408 F.3d 945, 965 (7th Cir. 2005) (equitable estoppel requires a showing the defendant "engaged in affirmative misconduct rather than mere negligence").

In *Dierking*, the defendant's insurer unintentionally wrote an incorrect injury date on a proposed release and check given to the injured plaintiff during the two-year limitations period. 258 N.W.2d at 314. Subsequently, the plaintiff and her attorney relied on the injury date stated by the insurer in filing suit more than two years after the plaintiff's cause of action accrued. *Id.* This court held the plaintiff and her husband, who had filed a claim for loss of consortium, had not established the intent element of equitable estoppel because the insurer's error was unintentional: "[The plaintiffs] failed, however, to show any conduct or words from which can be implied an intent on the part of defendant or its insurer to induce plaintiffs to rely to their prejudice on those incorrect dates in determining the date of Mrs. Dierking's injury for purposes of the statute of limitations." *Id.* at 316. We ruled as a matter

of law that the plaintiffs' claim was barred by the statute of limitations. *Id.* at 317; *see also Meier*, 454 N.W.2d at 580 (holding claim of equitable estoppel should not have been submitted to jury because there was no proof the defendant intended by its conduct or assertions to mislead the plaintiffs so they would not timely file suit).

Having reviewed the summary judgment record in this case, we reach the same conclusion here. Assuming for the moment that Lippolt's admission of fault or his insurer's payment of Hook's property damage claim constitute an affirmative act by Lippolt or the State to conceal Lippolt's volunteer status or Hook's claim against the State, there is no evidence either defendant intended to conceal these facts or to induce the plaintiff to forgo investigation into the existence of additional defendants. The evidence shows Lippolt attached no importance to his volunteer status and did not mention the purpose of his trip to his own attorney until answering the plaintiff's interrogatories more than two years after the accident. Lippolt did not realize until after the statute of limitations had expired that, because he was a department volunteer, the State Tort Claims Act was applicable to Hook's claim and the State was vicariously liable. Lippolt could hardly have intended to conceal Hook's claim against the State when he was unaware such a claim even existed. Similarly, the State itself did nothing to affirmatively mislead Hook or conceal her claim against the State, as the State had no notice of the accident and no contact with Hook until after the limitations period had run.[4]

---

[4]Hook also complains of conduct by Lippolt's attorney that occurred *after* the two-year statute of limitations had expired. This conduct cannot be a basis to estop the defendants from relying on the statute of limitations, however, because by the time this conduct occurred, Hook had already missed the filing deadline. *See Temple v. Gorman*, 201 F. Supp. 2d 1238, 1242 (S.D. Fla. 2002) (holding defendants' conduct after the statute of limitations expired "is irrelevant" to claim of equitable estoppel); *Merrill v. W.*

A federal district court has rejected a claim of estoppel under similar facts. *See Baker v. United States*, 341 F. Supp. 494 (D. Md. 1972). In *Baker*, the plaintiff was injured in a car accident with Smith, a federal employee. 341 F. Supp. at 495. Smith notified his personal insurer of the accident, and that insurer investigated the matter and communicated with the attorney representing the injured parties until it went into receivership. *Id.* Thereafter, Smith settled with one injured party, paying his own money. *Id.* No one connected with the matter—parties, attorneys or insurer—realized that Smith was acting within the scope of his employment at the time of the accident. *Id.* Smith did not even report the accident to the government. *Id.* Eventually, Baker filed suit against Smith and only then, after the statute of limitations had expired, did Smith first learn that he was considered to be within the scope of his employment at the time of the accident. *Id.* The court thereafter granted summary judgment to the defendants on the basis of the statute of limitations. *Id.* at 496. Noting that result might seem "unfair, since no one realized until too late that Smith was in the course of his employment by the government at the time of the accident," the court nonetheless concluded "no facts which would ordinarily amount to an estoppel against Smith, his insurer or the government have been shown." *Id.*

Finally, Hook contends Lippolt's insurer and attorney had a duty to investigate the circumstances of the accident and a duty to disclose to her that Lippolt was acting as a volunteer for the State. As we have discussed above, the duty of investigation was on Hook, not Lippolt. *See*

*Va. Dep't of Health & Human Res.*, 632 S.E.2d 307, 318 (W. Va. 2006) (holding department's delay in producing records requested by plaintiff was irrelevant to claim of fraudulent concealment in view of fact statute of limitations had expired before records were requested).

*Gould*, 905 F.2d at 745 ("The burden is on the plaintiff to discover the employment status of the tort-feasor and to bring suit within the applicable limitations period."); *Rios v. Montgomery County*, 852 A.2d 1005, 1022 (Md. Ct. Spec. App. 2004), *aff'd*, 872 A.2d 1, 10 (Md. 2005) (same). Additionally, a party's silence cannot provide the basis for estoppel "absent a special duty to disclose." *Martinelle v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 424 (2d Cir. 1999); *accord Alcorn v. Linke*, 257 Iowa 630, 641, 133 N.W.2d 89, 96 (1965) (" 'Estoppel may arise from silence, as well as words, where there is a duty to speak, and the party on whom the duty rests has an opportunity to speak, and, knowing the circumstances, keeps silent.' " (quoting *Helwig v. Fogelsong*, 166 Iowa 715, 724–25, 148 N.W. 990, 994 (1914))). We know of no authority that would impose an affirmative duty of disclosure on a tortfeasor prior to commencement of suit in the absence of any inquiry by the claimant. *See Ray v. Keith*, 859 So. 2d 995, 996–97 (Miss. 2003) (rejecting as a matter of law plaintiff's claim of equitable estoppel based on defendant's failure to reveal to plaintiff that defendant was acting within the course of employment at time of accident, notwithstanding defendant's insurer's payment of passengers' claims).

We conclude the defendants have established there is no genuine issue of material fact with respect to Hook's allegation of fraudulent concealment. Consequently, we hold as a matter of law the defendants are not estopped from asserting the statute of limitations as a defense to Hook's claim. The plaintiff argues this result is inequitable and allows "unscrupulous defendants" to "thwart" the Tort Claims Act. But this case is not about unscrupulous defendants thwarting the Tort Claims Act. Such defendants will be estopped under the same principles we have applied today. This case is about an injured party and a tortfeasor

who were both unaware that a third party was liable for the injured party's damages. Under these circumstances, it is not inequitable to impose the consequences of this unfortunate situation on the injured party who bore the duty of diligent investigation.

## VI. Waiver.

Hook argues on appeal that Lippolt waived the statute of limitations by failing to assert it in his initial answer to Hook's petition in her *first* lawsuit. Although Lippolt did not allege a statute-of-limitations defense in his initial answer, the district court allowed him to amend his answer to add that defense. Rather than appealing this ruling, Hook dismissed her first lawsuit. In Hook's second lawsuit, which is the one at issue in this appeal, Lippolt raised the statute of limitations as an affirmative defense in his initial answer. Given Hook's abandonment of her first lawsuit and Lippolt's prompt pleading of his limitations defense in this lawsuit, we question how Lippolt's action in the first lawsuit could constitute a waiver in the current lawsuit.

Even if Lippolt's conduct in the first lawsuit could be the basis for a waiver in this action, there is no evidence in the record that would support a finding of waiver. " '[W]aiver is the intentional relinquishment of a known right.' " *Huisman v. Miedema*, 644 N.W.2d 321, 324 (Iowa 2000) (quoting *State v. Hallum*, 606 N.W.2d 351, 354 (Iowa 2000)). At the time Lippolt filed his initial answer in the first lawsuit on April 9, 2002, he had no statute-of-limitations defense. On that date, there was still time for Hook to file her administrative claim within the two-year statutory period. Consequently, Lippolt's failure to allege the statute of limitations as an affirmative defense in his initial answer could not indicate the intentional relinquishment of that defense. Hook has failed,

therefore, to generate a genuine issue of material fact on her waiver argument.

### VII. Summary and Disposition.

By virtue of section 669.24, Lippolt is not personally liable on the plaintiff's negligence claim, and therefore, was not properly sued. In addition, the plaintiff's lawsuit is barred by the statute of limitations as a matter of law. The plaintiff had actual knowledge of her claim against Lippolt and imputed knowledge of her claim against the State more than two years before she filed her administrative claim with the state appeal board. In addition, there is no evidence that would generate a genuine issue of material fact on the plaintiff's claims of equitable estoppel and waiver.

We hold the district court erred in granting partial summary judgment to the plaintiff and overruling the defendants' motions for summary judgment. Accordingly, we reverse the district court's ruling and remand this case to the district court for entry of judgment in favor of the defendants on the plaintiff's negligence claim and for dismissal of the State from this action.

**REVERSED AND REMANDED.**

All justices concur except Baker, J., who takes no part.