# IN THE COURT OF APPEALS OF IOWA

No. 18-2037
Filed November 6, 2019

**ROBERT RAW,**
        Plaintiff-Appellant,

**vs.**

**CHRISTINA SPOFFORD,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Johnson County, Christopher L.

Bruns, Judge.


A plaintiff appeals the district court's grant of summary judgment in favor of

a defendant. **AFFIRMED.**


Vernon P. Squires and Melissa A. Carrington (until withdrawal) of Bradley

& Riley PC, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, and George A. Carroll, Assistant

Attorney General, for appellee.


Heard by Vaitheswaran, P.J., and Potterfield and Mullins, JJ.

**MULLINS, Judge.**

Dr. Robert Raw appeals the district court's grant of summary judgment on statute-of-limitation grounds in favor of Dr. Christina Spofford on his claims of defamation. Raw generally argues the court erred in concluding he was on inquiry notice of his claims in 2014, thus barring his 2017 petition as outside the two-year statute of limitations contained in Iowa Code section 614.1(2) (2017).

## I.      Background Facts and Proceedings

Raw began working at the University of Iowa (University) in 2004. Since then, he has worked as an anesthesiologist, clinical associate professor, and professor. Spofford began working as a trainee in the anesthesia department of the University's college of medicine in 2003. She became a member of the faculty in 2008. This litigation concerns allegations of potential sexual harassment against Raw and reported by Spofford in her role as a supervisory employee. The University's sexual harassment policy requires supervisory employees, such as Spofford, to inform the office of equal opportunity and diversity (EOD) or the office of the sexual misconduct response coordinator of any report of possible sexual harassment made to them by a subordinate.

In the spring of 2010, a trainee under Spofford's supervision, M.K., visited with Spofford about interactions she shared with Raw. Based on these discussions, Spofford believed University policy required her to report what M.K. described, considering the alleged interactions as potential sexual harassment on

the part of Raw.[1]  Spofford approached Dr. Timothy Brennan and sought advice relative to the information she received from M.K.  Brennan advised Spofford she, as M.K.'s supervisor and per University policy, had to report the information. Spofford also visited with Dr. Lois Geist.  In her role as associate dean of faculty affairs and development, Geist is responsible for oversight of policies and procedures.  In Geist's opinion, "the interaction as described involved possible sexual harassment."  Per university policy, Geist directed Spofford to provide a written statement of what was described to her.[2]  Spofford also approached her immediate supervisor, Dr. Michael Todd, about her conversation with M.K.  Todd also requested a written statement from Spofford.[3]  Todd also contacted Geist for advice, who advised he needed to report the matter to the EOD.  Todd did so, and he filed an official complaint with the EOD on June 11.

The EOD launched an investigation.  Raw denied the allegations.  In October, the EOD concluded there was no reasonable basis to believe Raw violated the University's sexual harassment policy.  The EOD's written findings,

---

[1] M.K. did not desire to pursue a formal complaint against Raw.  The University's sexual harassment policy requires supervisors to report allegations of sexual harassment, "even if the alleged victim does not wish any action to be taken."

[2] In her written statement to Geist, Spofford recounted what M.K. allegedly told her.  The allegations included Raw placing his hand on M.K.'s upper thigh during a closed-door exchange in his office, Raw asking M.K. if she was homosexual, Raw telling M.K. she would feel better if she had sex more often, and Raw touching other staff and commenting on their physique in a sexual tone.  Spofford also noted other specific individuals were aware of several incidents of inappropriate behavior on Raw's part.

[3] Spofford also provided a written statement to Todd; Todd made edits to the document and forwarded it to EOD personnel.  Generally, this statement contained the same allegations but added allegations that Raw showed another female doctor his underwear.

M.K., after reviewing Spofford's letter, advised Todd it contained "many significant areas of inaccuracy" and was "highly subjective in regards to" Spofford's "point of view and personalized interpretation of events and conversations which, in some instances, never occurred."  Todd indicated in his deposition that his role was not to investigate the accuracy of the information but instead report it to the EOD for investigation.

which were provided to Raw, did not identify his accusers. The findings did identify the individuals who were interviewed during the investigation, which included Spofford but not M.K. The record indicates that in January 2011, Raw requested the EOD to provide him with identifying information for the reporting parties and alleged victims of sexual harassment. The EOD declined, noting policy does not require such information to be disclosed. The record indicates Raw continued to attempt to identify his accusers in the ensuing years.

In August 2014, Raw submitted an "addendum" to be placed in his file to be associated with the EOD complaint and findings. In this document, Raw generally discussed his displeasure with the investigation and the University's failure to punish those who falsely accused him of sexual harassment. Raw indicated in his addendum that he suspected M.K. to be his accuser, which was "indirectly confirmed" by a "serendipitous comment" in the EOD findings. He also stated that, despite the reporting parties not being disclosed in the findings, identities of the reporting parties "were however easy for [him] to subsequently determine." He specifically identified Spofford and two other doctors as his "third party false accusers," noting their identities became apparent to him after reading the final EOD report and stating he "was easily able to associate some specific lies with Dr. Spofford whose name was mentioned in the report as a person interviewed" and he could "state with certainty which lies were statements of . . . Spofford." He also discussed the harm he has experienced as a result of the allegations, noting he has spent significant time and resources trying to clear his name, lost nearly two years of his professional life, and has changed permanently in many ways. He

also indicated an intention to pursue legal action, noting: "The civil court is the venue for false allegations to be processed and justice to be found."

Historically, Raw received three-year appointments to his positions. In 2015, the University gave Raw a final one-year appointment in his positions. Raw pursued a grievance. In July 2015, during the grievance process, Raw was made aware of the letter Spofford wrote to Geist in 2010. According to his affidavit in this litigation, but contrary to his 2014 addendum, Raw stated "this was the first time [Raw] knew that [] Spofford made allegations against [him] involving harassment."[4] Raw was unsuccessful in his grievance; he resigned from his employment with the University in December 2016.

In May 2017, Raw filed a petition at law forwarding claims of libel per se and libel per quod against Spofford. Roughly a year later, Raw amended his petition to add claims of slander per se and slander per quod. In September 2018, Spofford moved for summary judgment. In her memorandum in support of her motion, Spofford asserted summary judgment was appropriate on three theories— (1) sovereign immunity, (2) the statute of limitations, and (3) qualified privilege. As to the statute of limitations, Spofford argued Raw was on inquiry notice of his claims in 2010 and his petition was therefore barred by the two-year statute of limitations. Raw resisted. As to the statute of limitations, Raw argued his claims did not accrue until 2015, when he was made privy to the statements actually made about him. In her reply, Spofford maintained the claims accrued in 2010, or

---

[4] Raw also stated in his affidavit that he learned through discovery in this litigation of the written statement that made its way to the EOD through Todd and oral statements Spofford made about him.

6

alternatively in 2014, when Raw specifically named Spofford as one of his false accusers. Raw disagreed in his counter reply.

Ultimately, the court granted summary judgment in favor of Spofford. Following a majority of jurisdictions, the district court concluded the discovery rule applied to Raw's claims under the circumstances of this case and found "Raw was on notice of a defamatory injury to his reputation resulting from a statement or statements made about him by Dr. Spofford" by August 4, 2014, given the fact that, at that point in time, Raw was aware of "specific lies" made by Spofford. The court granted summary judgment in favor of Spofford on statute-of-limitations grounds and declined to address Spofford's other claimed bases for summary judgment. As noted, Raw appeals.

## II.    Standard of Review

Appellate review of summary judgment rulings is for correction of errors at law. *Albaugh v. Reserve*, 930 N.W.2d 676, 682 (Iowa 2019). "A motion for summary judgment is appropriately granted when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 542 (Iowa 2019) (ellipsis in original) (quoting Iowa R. Civ. P. 1.981(3)). "An issue is 'genuine' if the evidence in the record 'is such that a reasonable jury could return a verdict for the nonmoving party.'" *Honomichl v. Valley View Swine, LLC*, 914 N.W.2d 223, 230 (Iowa 2018) (quoting *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015)). The record is viewed in the light most favorable to the nonmoving party, and that party is granted all reasonable inferences that can be drawn from the record. *Id.* "Summary judgment is appropriate if the only conflict concerns the legal consequences of undisputed

facts." *Id.* (quoting *Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 393, 398 (Iowa 2017)).

## III. Analysis

As an initial matter, the district court concluded the discovery rule applies to defamation claims for statute-of-limitations purposes. The Iowa Supreme Court has "not decided whether the discovery rule applies to . . . nonnegligence claims such as defamation." *Linn v. Montgomery*, 903 N.W.2d 337, 343 (Iowa 2017).[5] While we are not bound by concessions or agreements of the parties, *see generally Noble v. Iowa Dist. Ct.*, 919 N.W.2d 625, 629–30 (Iowa Ct. App. 2018), because the parties agree the discovery rule applies to such claims, we will assume it does for purposes of this matter.

Raw makes various arguments on appeal. They can all be boiled down to a challenge to the district court's application of the discovery rule in this matter. First, Raw appears to argue the court improperly considered Spofford's argument that he was on inquiry notice of his claims in 2014 because the argument was raised for the first time in her reply to Raw's resistance to her motion for summary judgment. Spofford, in her memorandum of law in support of her motion for summary judgment, argued Raw knew of the alleged defamation in 2010 and his 2017 petition was therefore barred by the two-year statute of limitations. In his resistance materials, Raw argued he did not discover the defamatory statements

---

[5] This court has relied on *Kiner v. Reliance Insurance Company*, 463 N.W.2d 9, 13 (Iowa 1990), to conclude the discovery rule does not apply to claims of a defamatory nature. *See Davenport v. City of Corning*, No. 06-1156, 2007 WL 3085797, at *6 (Iowa Ct. App. Oct. 24, 2007). In *Linn*, the supreme court clarified the plaintiff in *Kiner* did not argue for application of the discovery rule. 903 N.W.2d at 343 n.2.

until 2015, so his petition was well within the limitations period. In her reply to Raw's resistance, Spofford reasserted her belief that the claims accrued in 2010, but alternatively argued they accrued in 2014, when Raw specifically named Spofford as one of his false accusers. We conclude Spofford's alternative assertion in her summary judgment reply brief to be a permissible response to Raw's resisting argument. *Cf. State v. Carroll*, 767 N.W.2d 638, 644 (Iowa 2009) (concluding appellant can properly respond in a reply brief to issues raised in the appellee's brief).[6] In any event, both parties took the position that the discovery rule was in play, and Raw had a full and fair opportunity to respond to the argument, and in fact did in his counter reply. *Cf. Terpstra*, 2018 WL 2246838, at *2 (reversing grant of motion to dismiss because non-moving party did not have notice of and chance to respond to affirmative defense raised by the court sua sponte).[7]

Next, Raw argues a genuine issue of material fact exists as to whether Raw knew or should have known of his claims against Spofford in 2014. He argues that his 2014 belief that Spofford was his false accuser was mere speculation, and the

---

[6] Raw relies on our decision in *In re Estate of Terpstra*, No. 17-0893, 2018 WL 2246838 (Iowa Ct. App. May 16, 2018), to support his argument that Spofford's failure to raise the 2014 accrual argument in her initial summary judgment materials amounted to a waiver of the argument. *Terpstra* is readily distinguishable. In *Terpstra*, the moving party did not plead the statute of limitations at all. 2018 WL 2246838, at *1. Instead, the district court raised the statute of limitations sua sponte and granted the motion to dismiss. *Id.* This court reversed because the movant did not provide the non-moving party "with notice of the actual affirmative defense relied on by the court." *Id.* at *2.

[7] Spofford moved to strike Raw's counter reply as not authorized by the rules of civil procedure. In a thorough and well-reasoned ruling, the district court denied the motion, although it did strike portions of the counter reply it found improper. *See* Iowa R. Civ. P.1.434. The court explained, "Parties are entitled to respond to the arguments asserted against them—denial of such opportunity would be prejudicial" and ruled Raw was "entitled to the opportunity to respond to the new argument not found in the initial briefing that the statute of limitations began to run on August 4, 2014."

actual harm he suffered underlying his claims did not come to fruition until 2015, when the grievance of his non-reappointment was rejected. As to his libel-per-se claim, Raw additionally argues his claim could not have accrued until he saw the specific accusations Spofford made against him because such a claim requires a showing that defamatory words carry a presumption of harm. As to his claim of libel per quod, he argues the claim could not accrue until he suffered actual harm, which did not occur until the exhaustion of his administrative appeal.

Claims founded on injuries to reputation, such as defamation, are subject to a two-year statute of limitations. *See* Iowa Code § 614.1(2); *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 383 (Iowa Ct. App. 1989). Our inquiry focuses on when the cause of action accrued, not when the underlying conduct occurred. *See Skadburg v. Gately*, 911 N.W.2d 786, 792 (Iowa 2018). A statute of limitations begins to run at the time of accrual of a cause of action. *Albrecht v. Gen. Motors Corp.*, 648 N.W.2d 87, 90 (Iowa 2002). Generally, under the discovery rule, statutes of limitation do "not begin to run until the injured person has actual or imputed knowledge of all the elements of the cause of action." *Hook v. Lippolt*, 755 N.W.2d 514, 521 (Iowa 2008) (quoting *Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985)). We turn to whether there is any genuine issue of material fact as to whether Raw had actual or imputed knowledge of all of the elements of his claims.

"Defamation includes the twin torts of libel and slander. Libel involves written statements, while slander involves oral statements." *Bierman v. Weier*, 826 N.W.2d 436, 444 (Iowa 2013). Iowa "recognize[s] two types of defamation: per quod and per se." *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 46

(Iowa 2018). Per-quod defamation requires the establishment of "six elements: (1) publication, (2) a defamatory statement, (3) falsity, (4) maliciousness, (5) the statement was of or concerning the party, and (6) resulting injury." *Id.* Per-se defamation requires the establishment of the same elements, except for falsity, malice, and injury, which are legally presumed. *Id.*

Raw's 2014 addendum renders undisputed that by no later than August of that year, he had actual knowledge of all of the elements of his claims—that Spofford published a defamatory statement concerning him, which he believed to be false and malicious and resulted in injury to him. First, Raw verified he was easily able to identify Spofford as a false accuser after reading the EOD's written findings, which he received in 2010; he specifically noted he "was easily able to associate some specific lies with Dr. Spofford whose name was mentioned in the report as a person interviewed" and he could "state with certainty which lies were statements of . . . Spofford." As to publication, it is undisputed that Spofford reported the allegations, and Raw believed the same in 2010 after reading the EOD report. As to whether the statements were defamatory,[8] Raw professed in his 2014 addendum to the resulting injury to his reputation, noting, among other things, "The stench of pig lingers long on one[']s flesh when one has been thrown into a pig pen." The evidence is likewise undisputed that Raw believed the allegations to be both false and malicious. Finally, as to injury, Raw elaborated in his addendum on the various injuries he suffered as a result of the allegations

---

[8] *See Defamatory Statement*, Black's Law Dictionary (11th ed. 2019) ("A statement that tends to injure the reputation of a person referred to in it.").

reported by Spofford—damage to reputation, mental and emotional trauma, financial loss, and effects on his professional and personal lives, to name a few.

Raw goes on to argue he could not have been on notice of his claims until he knew the actual words published about him, that is, when he was able to review the documentation and other evidence concerning the allegations against him in 2015 and thereafter during this litigation. He takes the position that he was unable to discover the claim because it was concealed by the University and he could not institute legal action without the benefit of knowing the specific allegations that were made against him. Yet, the EOD report apprised Raw of the specific allegations made against him, in vivid detail. The addendum makes clear that Raw was able to tie "specific lies" to Spofford after reviewing the EOD report. Raw knew of his claims; he did not need the materials he claims were necessary to trigger the statute of limitations in order to initiate legal proceedings. *See* Iowa R. Civ. P. 1.403(1) ("A pleading which sets forth a claim for relief . . . shall contain a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."); *see also McFarland v. City of Muscatine*, 67 N.W. 233, 234 (Iowa 1896) (stating a pleading is sufficient even if it charges beliefs rather than facts). We disagree with Raw's assertion that our supreme court's ruling in *Nelson v. Melvin* required that he plead in his "petition the words that were spoken or written." 19 N.W.2d 685, 689 (Iowa 1945). That case fell under the operation of former rule of procedure 70. *Id.* Now all that is required is a simple, short, concise, direct, and plain statement of a claim for relief. *See* Iowa Rs. Civ. P. 1.402(2)(a), .403(1). Even if he was required to plead the exact words used, Raw could have pled the "specific lies" he attributed to Spofford.

Next, we do not find Raw's belated assertion in his affidavit in this litigation, that 2015 "was the first time [Raw] knew that [] Spofford made allegations against [him] involving harassment," creates any genuine issues of material fact. Nor are we persuaded Raw suffered no injuries until after July 2015, when his re-appointment grievance was rejected. The 2014 addendum preached to the injuries Raw believed he had suffered as a result of the allegations against him.

We find the evidence undisputed that Raw had knowledge of all of the elements of his defamation claims against Spofford no later than 2014. *See Hook*, 755 N.W.2d at 521. As such, the time of the accrual of the claims is properly a question of law to be addressed by the court at the summary judgment stage. *See Honomichl*, 914 N.W.2d at 230; *Shams v. Hassan*, 905 N.W.2d 158, 164 n.2 (Iowa 2017) (quoting 54 C.J.S. *Limitations of Actions* § 437, at 486–87 (2010)). We affirm the district court's conclusions that Raw was on notice of his claims against Spofford no later than 2014, the claims had accrued at that time, and Raw's 2017 petition was therefore barred by the two-year statute of limitations contained in Iowa Code section 614.1(2).[9]

**AFFIRMED.**

---

[9] Given our disposition, we need not address Spofford's request that we affirm on grounds raised but not decided below. *See, e.g.*, *King v. State*, 818 N.W.2d 1, 10 (Iowa 2012) (noting appellate courts may "uphold a district court ruling on a ground other than the one upon which the district court relied provided the ground was urged in that court" (quoting *Martinek v. Belmond-Klemme Cmty. Sch. Dist.*, 772 N.W.2d 758, 762 (Iowa 2009))).