# IN THE SUPREME COURT OF IOWA

No. 17–0151

Filed May 11, 2018

**MICHELLE R. SKADBURG,**

Appellant,

vs.

**GARY GATELY** and **WHITFIELD & EDDY, P.L.C.,**

Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Cerro Gordo County, Rustin Davenport, Judge.

A lawyer and his firm seek further review of a court of appeals decision finding a genuine issue of material fact as to when the cause of action accrued. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Lylea Dodson Critelli and Nick Critelli of Critelli Law, P.C., Des Moines, for appellees.

**WIGGINS, Justice.**

A client appealed the district court's grant of summary judgment in favor of her attorney and the attorney's law firm in her legal negligence action. The client argued the court erred in finding the statute of limitations barred her action. She also contended the court erred in declining to apply the discovery rule, the continuous-representation rule, or the doctrine of fraudulent concealment.

We transferred the case to the court of appeals, which reversed the judgment of the district court. The attorney and his firm applied for further review, which we granted. On further review, we hold no genuine issue of material fact exists as to when the cause of action accrued and the statute of limitations bars the client's action because the cause of action accrued more than five years before she filed suit. We also hold the client may not use the discovery rule, the continuous-representation rule, or the doctrine of fraudulent concealment to circumvent the limitations period. Accordingly, we vacate the decision of the court of appeals and affirm the judgment of the district court.

## I. Background Facts and Proceedings.

Michelle Skadburg is the daughter and sole heir of Barbara Haffner, who passed away in August 2008. As the designated beneficiary of both Haffner's life insurance policy and 401k account, Skadburg received $20,000 and $87,054.65, respectively. The estate was insolvent because the debts exceeded the probate assets.

On November 6, the court appointed Skadburg as the administrator of Haffner's estate. Skadburg designated Gary Gately of Whitfield & Eddy, P.L.C. as the administrator's attorney. The next day, Skadburg signed the notice of appointment and notice to creditors. Upon Gately's advice, Skadburg alleges, she used the funds from Haffner's life insurance policy

and 401k account to pay the debts of Haffner's estate. Skadburg further alleges Gately failed to advise her that these funds were exempt from any claims against the estate.

On August 18, 2010, the district court closed the estate and discharged the administrator. Gately forwarded this order to Skadburg in a letter dated August 31, informing her the court had closed the estate and had discharged her as the administrator.

On August 19, 2015, Skadburg filed suit against Gately and Whitfield & Eddy, alleging Gately was negligent in his representation of her in connection with the probate of the estate and asserting Whitfield & Eddy was vicariously liable for Gately's negligence.[1] Gately answered, denying all claims and asserting the affirmative defense of the statute of limitations.

On August 18, 2016, Gately filed a motion for summary judgment, arguing the statute of limitations barred Skadburg's action. Calculating the accrual date most favorably to Skadburg, Gately argued the latest date on which the cause of action accrued was August 18, 2010, and Skadburg filed suit on August 19, 2015, one day after the five-year limitations period. Skadburg resisted, arguing she submitted her petition at law on August 18, 2015,[2] and asserting Gately represented her as administrator of the estate until August 31, 2010, when he sent the letter informing her the court had closed the estate.

In her supplemental response to Gately's motion for summary judgment, Skadburg alleged Gately never advised her that her ability to

---

[1]We will collectively refer to both Gately and Whitfield & Eddy as Gately.

[2]The court filed the petition at law on August 19. We go by the filing date. *See* Iowa R. Elec. P. 16.306(2); *Concerned Citizens of Se. Polk Sch. Dist. v. City Dev. Bd.*, 872 N.W.2d 399, 403–05 (Iowa 2015).

pay debts was very limited until four months after the second publication of the estate notice. Rather, Gately allegedly told her to pay all the debts and keep the leftover money. Skadburg further alleged Gately never told her the proceeds from the life insurance policy and the 401k account were exempt from any claims against the estate and she could keep those funds.

At first glance, it appears Skadburg made two claims, but these claims make up her overall claim that Gately negligently gave her incorrect legal advice. "Our law does not allow the splitting of a cause of action, and any effort to do so to avoid the commencement of the statute of limitations would be inconsistent with the purpose of cutting off stale claims." *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 458 (Iowa 2008). Thus, we will treat her allegations as one legal negligence claim.

The court granted Gately's motion for summary judgment. First, based on emails sent by Skadburg to Gately, the court held under the discovery rule Skadburg had actual or imputed knowledge of her potential action no later than March 26, 2010. Thus, the limitations period began to run from that date. The court also found neither the continuous-representation rule nor the doctrine of fraudulent concealment applied. In sum, the court ruled the statute of limitations barred Skadburg's action. Skadburg filed a rule 1.904(2) motion for enlargement of findings, which the court denied.

Skadburg appealed. We transferred the case to the court of appeals. The court of appeals reversed the judgment of the district court and remanded the case for further proceedings. It held there was a genuine issue of material fact as to when Skadburg attained knowledge regarding her cause of action. Thus, a genuine issue of material fact exists as to when the statute of limitations commenced. Alternatively, the court of appeals applied the continuous-representation rule and held the statute

of limitations did not begin to run until August 31, 2010, when Gately sent Skadburg the letter informing her the court had closed the estate and had discharged her as the administrator.

Gately applied for further review, which we granted. We lay out additional facts as necessary.

## II. Issue.

The only issue we must decide is whether the statute of limitations precludes Skadburg's action.

## III. Scope of Review.

We review the district court's grant or denial of a summary judgment motion for correction of errors of law. *Hook v. Lippolt,* 755 N.W.2d 514, 519 (Iowa 2008). If there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law, the district court should grant the motion for summary judgment. *Nationwide Mut. Ins. v. Kelly,* 687 N.W.2d 272, 274 (Iowa 2004); *accord* Iowa R. Civ. P. 1.981(3). The moving party has the burden of showing the absence of a genuine issue of material fact. *Hlubek v. Pelecky,* 701 N.W.2d 93, 95 (Iowa 2005). We view the facts contained in the record in the light most favorable to the nonmoving party. *Nelson v. Lindaman,* 867 N.W.2d 1, 6 (Iowa 2015). We also draw every legitimate inference in favor of the nonmoving party. *Id.* at 6–7.

## IV. Statute of Limitations.

Skadburg contends the district court erred in dismissing her legal negligence action based on the statute of limitations. Skadburg is not claiming a written contract existed between her and Gately. Therefore, the five-year limitations period in Iowa Code section 614.1(4) (2015) is applicable to her legal negligence claim. *See Vossoughi v. Polaschek,* 859 N.W.2d 643, 648 (Iowa 2015) (applying section 614.1(4)'s five-year

limitations period to a legal negligence claim). Iowa Code section 614.1(4) provides,

> Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared:
>
> . . . .
>
> 4. *Unwritten contracts—injuries to property—fraud—other actions.* Those founded on . . . all other actions not otherwise provided for in this respect, within five years . . . .

Iowa Code § 614.1(4).

Skadburg concedes Gately's negligence occurred from the time of her appointment as the administrator on November 6, 2008, through December of 2008. In her answers to interrogatories, Skadburg stated, "At the time the estate was opened, Mr. Gately told me to pay all bills and I could keep the remaining money." Skadburg further stated, "In December of 2008, he told me to pay the U.S. Bank credit card and that I could forward any other creditors to him[,]" and "I told him all other bills had been paid."

Skadburg also admits she filed her petition at law more than five years after the acts of negligence occurred. However, our inquiry does not focus on when Gately's negligence occurred. Rather, the question is when her cause of action accrued. *See Vossoughi*, 859 N.W.2d at 649–50. If the cause of action accrued more than five years before Skadburg filed her petition at law, we must then address whether the discovery rule or the continuous-representation rule tolls the limitations period, or whether the doctrine of fraudulent concealment estops Gately from raising the statute of limitations as an affirmative defense.

Legal negligence means an attorney has failed "to use such skill, prudence[,] and diligence as lawyers of ordinary skill and capacity

commonly possess and exercise in the performance of the tasks which they undertake." *Millwright v. Romer*, 322 N.W.2d 30, 32 (Iowa 1982) (en banc) (quoting *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 491 P.2d 421, 422–23 (Cal. 1971)). To demonstrate a prima facie case of legal negligence, the plaintiff must establish

> (1) a duty arising from the established existence of an attorney–client relationship; (2) the attorney breached that duty; (3) the attorney's breach was the proximate cause of injury to the client; and (4) the client suffered actual damage, injury, or loss.

*Barker v. Capotosto*, 875 N.W.2d 157, 161 (Iowa 2016); *accord Ruden v. Jenk*, 543 N.W.2d 605, 610 (Iowa 1996).

No cause of action accrues until the attorney's act or omission, which constitutes the breach of duty, produces actual injury to the plaintiff's interest. *Vossoughi*, 859 N.W.2d at 649–50. The injury must be "actual loss" instead of "speculative harm[] or the threat of future harm." *Id.* at 650 (quoting 7A C.J.S. *Attorney & Client* § 303, at 337 (2004)). No cause of action accrues until the plaintiff suffers actual injury, regardless of the plaintiff's knowledge or lack thereof. *Id.* In the context of legal negligence actions, we have held "[t]he cause of action accrues when the client sustains an actual, nonspeculative injury and has actual or imputed knowledge of the other elements of the claim." *Id.* at 652 (footnote omitted); *see Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985) (stating the limitations period commences when the plaintiff "has actual or imputed knowledge of *all* the elements of the action" (emphasis added)).

In *Vossoughi*, the plaintiffs entered into three agreements in September 2006 for the sale of real and personal property. 859 N.W.2d at 645–46. In March 2007, the plaintiffs executed a warranty deed the defendant had prepared that transferred title to the real property to one of

the buyers. *Id.* at 647. The defendant assured the plaintiffs that he would include in the warranty deed an additional page with language stating that the remaining payment obligations on the personal property would remain secured by the real property. *Id.* The defendant did not keep his promise. *Id.* In February 2008, the buyers stopped making payments on the aforementioned remaining payment obligations in which they were to pay a certain sum of money for the plaintiff's personal property. *Id.*

We found the plaintiffs suffered actual injury when the buyers stopped making payments in February 2008, not when the plaintiffs executed the faulty warranty deed. *Id.* at 652. We reasoned "[u]ntil [the buyers] stopped making payments in February 2008, it was entirely possible the plaintiffs would have continued collecting contract payments without disruption." *Id.* Thus, "it was entirely possible the decision to structure the transaction without the protection of a mortgage on the real estate or a perfected security interest in the personal property would cause the sellers no actual injury." *Id.*

Applying *Vossoughi*, we find Skadburg sustained actual, nonspeculative injury when she paid the creditors with the exempt funds on Gately's alleged advice in 2008. Therefore, her cause of action accrued in 2008 when she made those payments. Because Skadburg made these payments more than five years before she commenced this action on August 19, 2015, section 614.1(4) bars her action unless a legal doctrine tolls the limitations period or estops Gately from raising the statute of limitations as an affirmative defense.

**V. Whether a Legal Doctrine Tolls the Five-Year Limitations Period or Estops Gately from Raising the Statute of Limitations as an Affirmative Defense.**

Skadburg argues three exceptions to the strict commencement of the limitations period. These exceptions are the discovery rule, the continuous-representation rule, and the doctrine of fraudulent concealment. Although Gately has the burden of establishing the statute-of-limitations defense, Skadburg, as the party attempting to avoid the limitations period, has the burden of demonstrating any exception. *See Neylan v. Moser*, 400 N.W.2d 538, 541 (Iowa 1987).

**A. The Discovery Rule.** Generally, "a cause of action accrues when the aggrieved party has a right to institute and maintain a suit." *Chrischilles v. Griswold*, 260 Iowa 453, 461, 150 N.W.2d 94, 99 (1967), *superseded by statute on other grounds*, 1975 Iowa Acts ch. 239, § 26 (codified at Iowa Code § 614.1(9) (1977)), as *recognized in Langner v. Simpson*, 533 N.W.2d 511, 516–17 (Iowa 1995); *see also Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa 1993) ("It is well settled that no cause of action accrues under Iowa law until the wrongful act produces loss or damage to the claimant."). However, the discovery rule tolls the statute of limitations. *K & W Elec., Inc. v. State*, 712 N.W.2d 107, 116 (Iowa 2006).

We first addressed the discovery rule in *Chrischilles*, 260 Iowa at 461–63, 150 N.W.2d at 100. There the construction of the house based on the defendant's negligent architectural design was completed in the fall of 1960. *Id.* at 455, 150 N.W.2d at 96. However, the plaintiff did not become aware of the defendant's negligent performance until December 1964 when the plaintiff found water dripping through the ceiling of the house. *Id.* Adopting the discovery rule for negligence claims, we held "a cause of action based on negligence does not accrue until [the] plaintiff has in fact discovered that he [or she] has suffered injury or by the exercise

of reasonable diligence should have discovered it."[3] *Id.* at 463, 150 N.W.2d at 100. Thus, we concluded the plaintiff's cause of action accrued in December 1964. *Id.* at 463, 150 N.W.2d at 101.

We elaborated on the meaning of knowledge in *Franzen*. In that case, we stated the limitations period does not commence until the plaintiff "has actual or imputed knowledge of all the elements of the action." 377 N.W.2d at 662. However, "[i]t is sufficient that the facts would support a cause of action" and therefore, "[i]t is not necessary that the person know they are actionable." *Id.* In doing so, we distinguished knowledge of the facts from knowledge that the facts are actionable. *Id.*

Specifically as to imputed knowledge, once a plaintiff learns information that would alert a reasonable person of the need to investigate, the plaintiff "is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation." *K & W Elec., Inc.*, 712 N.W.2d at 117 (quoting *Perkins v. HEA of Iowa, Inc.*, 651 N.W.2d 40, 44 (Iowa 2002)). "[T]he duty to investigate does not depend on exact knowledge of the nature of the problem that caused the injury" because "[i]t is sufficient that the person be aware that a problem existed." *Franzen*, 377 N.W.2d at 662. The duty to investigate includes determining the exact cause of the injury. *See id.* at 662–63.

Based on these principles, we held in *Franzen* the plaintiffs—a husband and wife—knew on the date of the accident all the necessary facts such that they had a duty to investigate the existence of a cause of action. *Id.* at 664. In that case, the husband injured his arm when it became entangled in the revolving beaters of a forage wagon. *Id.* at 663. We

---

[3]We realize the language in *Chrischilles* is unclear. We clarify that the cause of action accrues when the injury occurs. The discovery rule does not reset or shift the accrual date but merely tolls the statute of limitations.

reasoned the plaintiffs were on inquiry notice regarding the possible defects of the forage wagon on the date of the accident, although they neither knew of the exact defects nor knew they might have an actionable claim until their lawyer suggested as much. *Id.* Because they had imputed knowledge, we concluded the cause of action accrued on the date of the accident. *Id.* at 664.

We have applied the discovery rule to legal negligence actions. *E.g.,* *Cameron v. Montgomery*, 225 N.W.2d 154, 155–56 (Iowa 1975). We stated three reasons for applying the discovery rule to such actions. *Millwright*, 322 N.W.2d at 34. First, "a client has a right to rely upon the superior skill and knowledge of his attorney." *Id.* Second, "the absence of such a rule denigrates the duty of the attorney to make full and fair disclosure to the client." *Id.* Third, the client does not have the ability or opportunity to detect the mistake. *See id.*

In applying the discovery rule to the case at hand, we focus on three communications from Skadburg to Gately that are relevant to determining when Skadburg knew or should have known about her actual injury. In the January 30, 2009 email to Gately, Skadburg wrote,

> I would like to think I would have done the right thing and paid off her debts even if I wasn't legally obligated to . . . .
>
> I should have given you the entire list of debts and asked for more specific advice on what to do, but I took you at your word to pay the debts and did that. Anyway, it was her money and her debt and no use second guessing now as they have been paid and that is that.

In the December 30 email to Gately, Skadburg wrote,

> Paying off mom's debt with money that should not have been part of the estate was one of the issues that has arisen. Gary and I have talked through this and what is done is done, but please take these kinds of things into consideration when setting the fee.

In a March 26, 2010 note to Gately, Skadburg wrote, "One other question—is any of the money paid to other creditors refundable since those should not have been paid out of the estate assets?" These three communications show Skadburg was on inquiry notice as early as January 30, 2009. The latest date when she had actual or imputed knowledge of Gately's possible negligence was March 26, 2010.

Skadburg contends she did not actually know the critical elements of her claim—that Gately breached his duty and caused her damages—on those dates. However, even assuming Skadburg did not have actual knowledge of these elements, she was on inquiry notice because she knew a problem existed, i.e., possible defects with Gately's advice in which he told her to pay the debts with exempt funds at the time the court opened the estate.

Skadburg also argues she did not have imputed knowledge. She cites to *Ranney v. Parawax Co.*, 582 N.W.2d 152 (Iowa 1998) (en banc) to support her alleged lack of imputed knowledge. In that case, we held the plaintiff was on inquiry notice by 1987 or 1988 at the latest when his wife, who was learning in law school about occupational diseases caused by chemical exposure, discussed with him the possibility that his exposure to toxic materials at the defendant's workplace caused his Hodgkin's disease. *Id.* at 154–56. We concluded the plaintiff had a duty to investigate once he knew or should have known that his disease was possibly—not probably—compensable. *Id.* at 155.

*Ranney* does not help Skadburg's contention. Again, on January 30, Skadburg was on inquiry notice regarding the possible connection between Gately's bad legal advice and her damages. Skadburg's argument that economic loss may occur at no fault of the attorney representing the administrator is irrelevant because she was on inquiry notice. The

December 30 email—"[p]aying off mom's debt with money that should not have been part of the estate was one of the issues that has arisen"—certainly establishes actual knowledge on the part of Skadburg about Gately's negligence in advising her to pay the debts with funds from the life insurance policy and 401k account. The March 26 note—"since those should not have been paid out of the estate assets"—also affirmatively and explicitly establishes Skadburg had actual knowledge.

Viewing the record in the light most favorable to Skadburg, the latest date she had actual or imputed knowledge of the possible connection between Gately's advice and the damages caused by that advice, i.e., the payment of the estate's debts from exempt funds was March 26, 2010. Accordingly, we find there is no genuine issue of material fact that by March 26, 2010, Skadburg had the duty to investigate the possible connection between Gately's bad legal advice and her damages once she knew of such a possibility. At that time, the statute of limitations began to run under the discovery rule. She filed her action more than five years after March 26, 2010. Therefore, as a matter of law, we find the discovery rule does not prevent the statute of limitations from extinguishing her cause of action.

**B.** **The Continuous–Representation Rule.** Skadburg next contends she filed her petition at law within five years of the end of Gately's representation. She argues Gately's representation ended on August 31, 2010, when Gately sent a letter informing her the court had closed the estate and had discharged her as the administrator. Gately argues his representation ended on August 18 because the court had closed the estate and had discharged the administrator on that date. To decide this appeal, we need not decide when the representation ended because we find

as a matter of law the continuous-representation rule does not apply under these facts.

The continuous-representation rule embodies the idea that a client is entitled to rely on and have confidence in the skills and good faith of his or her attorney. *Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.*, 789 F.3d 821, 826 (8th Cir. 2015). The policy reasons undergirding this rule are

> both the unfairness of requiring the injured client to challenge its professional advisor while remedial efforts are under way and the potential abuse where the negligent advisor attempts to avoid liability by diverting the client from bringing a legal action until the limitations period expires.

*Id.* (quoting *In re Arbitration Between Clark Patterson Eng'rs, Surveyor, & Architects, P.C. & City of Gloversville Bd. of Water Comm'rs*, 809 N.Y.S.2d 247, 249 (App. Div. 2006)).

We have not addressed the continuous-representation rule. However, we have defined the analogous continuous-treatment rule in medical negligence actions. *E.g.*, *McClendon v. Beck*, 569 N.W.2d 382, 385 (Iowa 1997). Under the continuous-treatment rule, the limitations period may be tolled until the cessation of medical treatment when the patient has been receiving continuing care for the same injury from the doctor whose negligence is at issue. *Id.* at 385. Yet we have explicitly declined to apply this rule when the patient had notice of the negligence before the termination of treatment. In *Ratcliff v. Graether*, we stated, "If there is actual proof that the patient *knows or reasonably should know of the injury or harm before termination of medical treatment,* the statute of limitations is not tolled." 697 N.W.2d 119, 125 (Iowa 2005) (quoting *Stanbury v. Bacardi*, 953 S.W.2d 671, 676 (Tenn. 1997)).

The continuous-representation rule, like the continuous-treatment rule, constitutes "a particularized application of the discovery rule." *See id.* (quoting *Stanbury*, 953 S.W.2d at 676). We adopted the discovery rule for negligence claims in *Chrischilles*, reasoning

> [i]f an injured party is wholly unaware of the nature of his [or her] injury and the cause of it, it is difficult to see how he [or she] may be charged with a lack of diligence or sleeping on his [or her] rights.

260 Iowa at 461, 150 N.W.2d at 100. However, this policy reason does not apply in circumstances in which a plaintiff has actual or imputed knowledge of his or her injury. Knowledge on the part of the plaintiff overrides the rationale undergirding the continuous-representation rule.

We therefore decline to apply the continuous-representation rule to the case at hand because, as we have established earlier in our opinion, Skadburg had notice of Gately's negligence before the termination of their attorney–client relationship, whether that relationship ended on August 18 or August 31.[4] *Cf. Ratcliff*, 697 N.W.2d at 125.

We acknowledge Skadburg had a right to rely on Gately's skill and expertise. Moreover, Gately had a duty to give sound legal advice. However, well before Skadburg retained new counsel in 2014, she had actual or imputed knowledge of Gately's negligence. *Cf. Dudden v. Goodman*, 543 N.W.2d 624, 628–29 (Iowa Ct. App. 1995) (holding the executor "had no reasonable means of knowing the estate's attorney may have caused the estate to pay excessive" taxes and she "had a right to rely

---

[4]In *Stanbury*, the Tennessee Supreme Court stated the judicial and legislative adoption of the discovery rule in Tennessee abrogated the common law continuous-treatment rule. 953 S.W.2d at 676. Admittedly, our adoption of the discovery rule for negligence claims, including legal negligence claims, raises the question of whether the continuous-representation rule has outlived its utility. However, we need not decide today whether we should outright reject the continuous-representation rule. The rule does not apply to the case at hand anyway.

on [the attorney's] superior knowledge" until she visited an accountant regarding the income tax return).

Accordingly, because no genuine issue of material fact exists as to whether Skadburg had actual or imputed knowledge prior to the end of the attorney–client relationship, we hold the continuous-representation rule does not apply, and Skadburg cannot use this defense to toll the statute of limitations.

**C.    The Fraudulent-Concealment Doctrine.**    Skadburg next contends Gately's failure to admit his fault constitutes fraudulent concealment.   In *Christy v. Miulli,* we explicitly distinguished fraudulent concealment grounded in the doctrine of equitable estoppel from fraudulent concealment that blends the principles of equitable estoppel with the discovery rule.  692 N.W.2d 694, 700–01 (Iowa 2005).

We first explained the version of fraudulent concealment that rests on equitable estoppel.  *Id.* at 700.  When a party's fraud or fraudulent concealment precludes another from knowing he or she has a cause of action within the applicable limitations period, then that party should not benefit from the protection of the statute of limitations.  *See id.*

We then described fraudulent concealment separately from its equitable estoppel roots and observed it "has evolved into a concept more akin to, yet ostensibly distinct from, the discovery rule."  *Id.*  We illustrated the rule as follows:

> [W]here the party against whom a cause of action existed in favor of another, by fraud or actual fraudulent concealment prevented such other from obtaining knowledge thereof, the statute would only commence to run from the time the right of action was discovered, or might, by the use of diligence, have been discovered.

*Id.* at 700–01 (alteration in original) (quoting *Koppes v. Pearson*, 384 N.W.2d 381, 386 (Iowa 1986) (en banc), *abrogated by Christy*, 692 N.W.2d at 701).

We observed this version of fraudulent concealment embodied an "odd blending" of equitable estoppel and the discovery rule and that blending was probably because we adopted the doctrine of fraudulent concealment before we adopted the discovery rule. *Id.* at 701; *see Woods v. Schmitt*, 439 N.W.2d 855, 861–62 (Iowa 1989) (distinguishing the doctrine of fraudulent concealment from the discovery rule, and noting the doctrine of fraudulent concealment was adopted in 1875 whereas the discovery rule was adopted in 1967), *abrogated on other grounds by Christy*, 692 N.W.2d at 701. *Compare Dist. Twp. of Boomer v. French*, 40 Iowa 601, 603 (1875) (adopting fraudulent concealment), *abrogated on other grounds by Christy*, 692 N.W.2d at 701–02, *with Chrischilles*, 260 Iowa at 462–63, 150 N.W.2d at 100 (announcing the discovery rule for negligence claims).

After examining the two versions of fraudulent concealment, we held fraudulent concealment as a form of equitable estoppel was proper. *Christy*, 692 N.W.2d at 701. We gave two reasons. *Id.* First, courts can uniformly identify and consistently apply the elements of equitable estoppel. *Id.* Second, there would be no confusion as to whether fraudulent concealment and the discovery rule are the same concepts. *Id.* We clarified "fraudulent concealment does not affect the running of the statutory limitations period." *Id.* Rather, it estops a defendant from raising a statute-of-limitations defense "when it would be inequitable to permit the defendant to do so." *Id.*

We now address whether fraudulent concealment estops Gately from asserting the statute of limitations as a bar to this action, not whether

it tolls the limitations period. To establish whether fraudulent concealment estops a defendant from asserting the statute of limitations, the plaintiff must show by a clear and convincing preponderance of the evidence

> (1) [t]he defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his [or her] prejudice.

See id. at 702 (quoting *Meier v. Alfa-Laval, Inc.*, 454 N.W.2d 576, 578–79 (Iowa 1990)).

Ordinarily, the plaintiff must show the defendant engaged in some affirmative act to conceal the cause of action. *Id.* However, our caselaw relaxes the requirement to allege and prove affirmative concealment when there is a confidential or fiduciary relationship. *Estate of Anderson ex rel. Herren v. Iowa Dermatology Clinic, PLC*, 819 N.W.2d 408, 415 (Iowa 2012). The relationship of trust and confidence between an attorney and his or her client gives rise to a duty on the part of the attorney "to reveal to the client all facts [that] might affect [his or] her interest." *Pride v. Peterson*, 173 N.W.2d 549, 555 (Iowa 1970); *accord Cornell v. Wunschel*, 408 N.W.2d 369, 375 (Iowa 1987) ("[W]hen . . . one of the parties has superior knowledge or a special situation, such as an attorney-client relationship, . . . we have required the party to make a full and truthful disclosure of all material facts within that party's knowledge.").

When a fiduciary relationship exists, mere silence supplies the affirmative-act requirement. *Pride*, 173 N.W.2d at 555; *cf. Hook*, 755 N.W.2d at 526 ("[A] party's silence cannot provide the basis for estoppel 'absent a special duty to disclose.'" (quoting *Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409, 424 (2d Cir.

1999))). Moreover, a fiduciary relationship also relaxes a plaintiff's duty of diligent investigation. *Pride*, 173 N.W.2d at 555; *cf. Hook*, 755 N.W.2d at 526–27 (stating the tortfeasor did not have a special duty to disclose and therefore holding the plaintiff bore the duty to diligently investigate the circumstances of the accident).

Despite a fiduciary relationship, the act of concealment must be independent of and subsequent to the original wrongdoing establishing liability. *Christy*, 692 N.W.2d at 702. Additionally, "[t]he circumstances justifying an estoppel end when '[the] plaintiff [becomes] aware of the fraud, or by the use of ordinary care and diligence should have discovered it.' " *Id.* (second and third alterations in original) (quoting *Faust v. Hosford*, 119 Iowa 97, 100, 93 N.W. 58, 59 (1903)). As such, the plaintiff must bring his or her cause of action within the applicable limitations period. *Id.*

We find that Gately's alleged fraudulent concealment is independent of and subsequent to his alleged negligence. This case is distinguishable from the facts of *Van Overbeke v. Youberg*, 540 N.W.2d 273, 276–77 (Iowa 1995), *abrogated on other grounds by Christy*, 692 N.W.2d at 701. In that case, we observed the plaintiff's core claim was the doctor's failure to disclose that she did not receive a certain injection. *Id.* at 276. We held the doctor's "[f]ailure to disclose that need, as a ground of liability, cannot be the basis for fraudulent concealment." *Id.* at 276–77. Otherwise, "there would effectively be no statute of limitations for negligent failure to inform a patient." *Id.* at 277.

Here, Gately's negligence was advising her to pay the debts with the respective life insurance policy and 401k funds even though the funds were exempt from claims against the estate and four months did not lapse from the date of the second publication. Gately's concealment constitutes

his silence after Skadburg told him she had paid all the bills in December 2008 and after Skadburg sent the three communications from January 30, 2009 to March 26, 2010, allegedly blaming herself for her economic loss while thinking Gately did "the best" that he could for her. In other words, Skadburg's contention concerning fraudulent concealment is that Gately should have told her that he gave incorrect legal advice concerning the administration of the estate. Based on the legal principles we outlined above, we find a genuine issue of material fact exists as to element (1)—whether Gately made a false representation or concealed material facts from December 2008 to March 26, 2010. *See Pride*, 173 N.W.2d at 555.

Additionally, a genuine issue of material fact exists as to element (3)—whether Gately intended to mislead Skadburg. In *Hook,* a driver, who was providing volunteer transportation services for a client of the Iowa Department of Human Services (DHS), struck the plaintiff's vehicle. 755 N.W.2d at 517–18. We held the record lacked evidence that either the driver or the state intended to conceal the material fact that the driver was a volunteer for the DHS. *Id.* at 525–26; *see Meier*, 454 N.W.2d at 580 (holding the dealer did not mislead the plaintiffs when the evidence did not show either party operated under the assumption that litigation was possible but rather showed the dealer tried to fix, possibly negligently, the pump, and continued to repair the pump and make assurances after the statute of limitations had run). The driver did not mention his volunteer status to his own attorney until the plaintiff served interrogatories. *Hook*, 755 N.W.2d at 525. Moreover, the driver did not know his volunteer status meant the state Tort Claims Act was applicable to the plaintiff's claim and the state was vicariously liable for the accident. *Id.* Additionally, the state had no notice of the accident until after the statute of limitations had run. *Id.* at 526.

Unlike in *Hook*, in which the driver was unaware that a claim under the state Tort Claims Act even existed, Gately was aware or at least should have been aware that Skadburg had a legal negligence action based on his incorrect legal advice and Skadburg's resulting injury. Notably, Gately, as a trained attorney, had superior knowledge of the law than Skadburg did. Yet Gately remained silent when Skadburg sent the communications allegedly blaming herself for her economic loss. We find a genuine issue of material fact exists as to element (3)—whether Gately intended Skadburg to act upon his silence.

However, no genuine issue of material fact exists as to elements (2)—whether Skadburg lacks knowledge of the facts—and (4)—whether Skadburg relied on Gately's concealment to her prejudice.

Drawing all legitimate inferences in favor of Skadburg, we will assume Skadburg lacked any knowledge regarding the possible defects in Gately's advice from December 2008 to when she sent her first email to Gately on January 30, 2009. However, at the earliest, Skadburg had inquiry notice that a problem existed on January 30. At the latest, Skadburg gained actual or imputed knowledge that a problem existed on March 26. Even using the March 26 date to begin the statutory clock does not change the fate of this case because Skadburg cannot use fraudulent concealment to estop Gately from raising his statute-of-limitations defense. "A person cannot claim concealment, of course, if he [or she] has knowledge" because estoppel presumes a lack of knowledge on the part of the party seeking to apply the doctrine. *Dierking v. Bellas Hess Superstore, Inc.*, 258 N.W.2d 312, 316 (Iowa 1977); *see Estate of Anderson*, 819 N.W.2d at 415–16 (holding there was no fact question as to whether the defendant dermatologist concealed the fact that he, rather than a pathologist, had evaluated the biopsy specimen when it was his customary

practice to inform his patients whether he would evaluate the biopsy specimens himself, he had so informed the plaintiff, and he regularly charged an additional fee when he would evaluate the specimens in-house).

Once Skadburg gained knowledge of Gately's incorrect legal advice, her reliance on Gately's alleged concealment became unreasonable. *See Christy*, 692 N.W.2d at 703 ("[A] patient's knowledge of pertinent facts and circumstances may affect the reasonableness of his [or her] continued reliance on a tortfeasor's representations."); *see also Dierking*, 258 N.W.2d at 317 (holding the plaintiffs failed to meet the reliance requirement when they had the "means of knowledge readily available" to know the exact date of the injury despite the defendant's alleged misrepresentation that the injury had occurred on a certain date). Admittedly, Skadburg was entitled to rely on Gately's legal advice. However, even the attorney–client relationship cannot justify Skadburg's reliance on Gately's silence after she gained knowledge of the possible defects in such advice.

We conclude as a matter of law Skadburg failed to prove by a clear and convincing preponderance of the evidence elements (2) and (4) of fraudulent concealment because Skadburg knew or was on inquiry notice about the deficiencies in Gately's advice at the time she sent her communications. Thus, her reliance upon the alleged concealment was unreasonable. Accordingly, no genuine issue of fact exists as to whether Gately fraudulently concealed Skadburg's cause of action for legal negligence, and Gately is entitled to judgment.

## VI. Disposition.

Based on the foregoing reasons, we vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

All justices concur except Hecht, J., who takes no part.