# IN THE SUPREME COURT OF IOWA

No. 20–1124

Submitted March 24, 2022—Filed April 22, 2022

**ELIZABETH DOWNING** and **MARCELLA BERRY,** as Co-Administrators of the **ESTATE OF LINDA BERRY,**

    Appellants,

vs.

**PAUL GROSSMANN,** and **CATHOLIC HEALTH INITIATIVES IOWA, CORP.** d/b/a **MERCY MEDICAL CENTER, MERCY MEDICAL CENTER WEST LAKES,** and **MERCY SURGICAL AFFILIATES,**

    Appellees.

---

On review from the Iowa Court of Appeals.


Appeal from the Iowa District Court for Polk County, David Porter, Judge.


The defendants seek further review of a court of appeals decision reversing the district court's grant of summary judgment in a medical malpractice action.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**


Oxley, J., delivered the opinion of the court, in which all justices joined.

Steve Hamilton (argued) and Molly M. Hamilton of Hamilton Law Firm, P.C., Clive, for appellants.

Joseph F. Moser (argued) and Stacie M. Codr of The Finley Law Firm, P.C., Des Moines, for appellees.

**OXLEY, Justice.**

A benign cyst on Linda Berry's right kidney was first detected on a computerized tomography (CT) scan taken at Mercy Medical Center[1] in 2004. Ms. Berry visited Mercy over the next several years for a variety of reasons, and the cyst was noted as an incidental finding on subsequent CT scans, including one taken during a visit to the ER on October 1, 2009, when Dr. Paul Grossmann treated her for colitis. This time, a radiologist noted the mass had grown in size from the prior scans, suggesting the mass should be further evaluated. But, according to the plaintiffs, no one mentioned the growing cyst to Ms. Berry or her primary care physician until another CT scan was taken when she broke her shoulder seven years later. By then it was too late. Ms. Berry was treated for renal cancer in April 2016, the cancer metastasized to her bones, and she passed away from cancer in 2019.

Prior to her death, in 2018 Ms. Berry filed a medical malpractice action against Dr. Grossmann and the Mercy affiliates for failing to disclose the kidney mass in October 2009. But she ran up against Iowa's six-year statute of repose found in Iowa Code section 614.1(9) (2018), which barred her claims because she initiated her case more than six years after Dr. Grossmann's actions. Ms. Berry's estate asserts the defendants should be equitably estopped from raising the statutory bar under the doctrine of fraudulent concealment. Fraudulent

---

[1]Defendant Catholic Health Initiatives Iowa, Corp. operates hospital facilities known as Mercy Medical Center, Mercy Medical Center–West Lakes, and Mercy Surgical Affiliates. We refer to these entities collectively as "Mercy." Dr. Grossmann is an emergency room doctor affiliated with the Mercy entities. The claims against the Mercy entities are all derivative of the claims against Dr. Grossmann, and we consider the claims collectively against the defendants.

concealment requires just that—fraudulent, or intentional, concealment of the plaintiff's cause of action. And the concealment must be distinct from the underlying act being concealed. Otherwise, there would never be a time limit for failure-to-disclose-type claims. When the underlying cause of action is one for failure to disclose a medical condition, as here, a defendant's continued failure to disclose the condition that goes to the heart of the plaintiff's underlying claim does not meet the requirement for an independent and subsequent act of concealment to trigger equitable estoppel.

The court of appeals read the requirement for an independent act of concealment too narrowly. The acts of concealment claimed by the estate are the same acts by Dr. Grossmann that form the basis of the estate's underlying claims of negligence. The fraudulent concealment doctrine therefore does not apply, and the defendants are not estopped from asserting the statute of repose defense, which undisputedly applies to the facts of this case. For the reasons explained below, we reverse the court of appeals and affirm the district court's grant of summary judgment for the defendants.

## I.

We recite the facts supported by the record in the light most favorable to the plaintiffs in considering whether the defendants were entitled to summary judgment on their statute of repose defense. Berry's primary care physician was with Broadlawns Family Medicine, and she used Mercy for emergency care. In 2004, Berry was hospitalized at Mercy for abdominal pain, and a CT scan showed a mass on her right kidney that was determined to be a benign cyst. Berry

received another CT scan at Mercy in December 2006 when she was seen for a urinary tract infection. This CT scan indicated her "right kidney is unchanged with a stable right renal cyst." Berry was not informed of the mass on her right kidney at either visit.

On October 1, 2009, Berry went to the Mercy emergency room complaining of constipation and nausea. Dr. Paul Grossmann, the on-call emergency room doctor, ordered a CT scan based on concerns Berry might have acute appendicitis, diverticulitis, or an incarcerated hernia. The initial CT scan reading revealed no abnormalities other than constipation, and Berry was sent home with medication for constipation. However, a final reading of the CT scan revealed that Berry had mild sigmoid colitis. Dr. Matthew Severidt, a Mercy resident working with Dr. Grossmann, called Berry's daughter, Elizabeth Downing, as they were driving home and told her, "You need to bring your mom back. Not everything was okay on the CT scan. Come back." Berry was prescribed an antibiotic for the colitis and again discharged with an appointment to follow up with Dr. Grossmann about the colitis on October 6.

The final reading of the CT scan also showed a large exophytic mass on Berry's right kidney that had increased in size from the scans taken in 2004 and 2006. Dr. Severidt wrote an addendum to Berry's chart noting the mass and stating: "Suggest MRI for evaluate." He also noted, "Patient will follow up with Dr. Grossmann in one week at which time further evaluation of right kidney can be undertaken." Although Dr. Severidt noted, "This was discussed with patient who voiced understanding," nothing was mentioned about the mass in Berry's

discharge papers, and Berry and Downing both denied ever being told about the mass despite the unusual request to return to the hospital because "not everything was ok" with the CT scan. We assume the mass was not discussed with Berry for purposes of reviewing the summary judgment ruling.

Berry went back to Mercy's emergency room late on October 3 with complaints of increased abdominal pain and constipation. Another CT scan showed the colitis was responding to the antibiotics, again depicting the mass on Berry's right kidney. Although the mass was deemed not to be the cause of Berry's pain, Dr. Roe, one of Dr. Grossmann's partners who was on call that night, wrote in his consultation notes: "Plan: Recommended follow up for R. kidney cystic mass with Dr. Grossmann, already discussed with patient on 10/1/09." A copy of the October 3 CT scan results in Berry's patient chart contained Dr. Grossmann's signature, indicating his acknowledgment of the results and recommendations for further testing. But again, Berry was not informed of the right kidney mass seen on the CT scan and was not informed that further testing was recommended.

On October 6, Berry saw Dr. Grossmann for her follow-up appointment concerning the colitis. Dr. Grossmann examined Berry and scheduled a colonoscopy. Dr. Grossmann's dictated notes made no mention of consulting with Berry about the kidney mass. Dr. Grossmann dictated and sent a letter to Berry's primary care physician at Broadlawns regarding his diagnosis and treatment of Berry's colitis. At his deposition, Dr. Grossmann explained that the letter was intended to inform Berry's primary care physician about the treatment

he provided. Dr. Grossmann claims he told Berry about the kidney mass at the October 6 appointment but he did not document it in his notes or the letter to her primary care physician because he was not consulted to treat the mass and it was a urology issue that was outside the scope of the treatment he could provide. Downing accompanied Berry to the October 6 appointment, and both she and Berry testified Dr. Grossmann never mentioned the mass, a fact we again accept as true. The estate's expert opines that Dr. Grossmann violated the standard of care because even incidental findings on a CT scan should be reported to a patient's primary care physician for follow-up.

After the colonoscopy and further evaluation of the colitis treatment, Dr. Grossmann discharged Berry from his care in December, informing her that her conditions had resolved. At an April 15, 2010 appointment, Berry's primary care physician read Dr. Grossmann's October 6 letter to Berry, which did not mention the right kidney mass or recommend further testing. Despite the notes in Berry's chart about the kidney mass, no additional testing was conducted.

Fast forward six years to April 24, 2016. Berry fell, severely injuring her shoulder and sending her back to Mercy's emergency room. Given Berry's bone abnormalities and her medical history, the ER doctor, Dr. Todd Peterson, recommended to Berry's primary care physician that Berry follow up with an orthopedic surgeon at the University of Iowa Hospitals and Clinics. As relevant here, a CT scan of Berry's chest, abdomen, and pelvis taken at the University Hospitals revealed that the right kidney mass had grown to 4.4 cm and was concerning for cystic renal cell neoplasm. Again, Berry was not informed of the

mass during her treatment, but a nurse discharging Berry happened to mention the kidney mass to her. Berry claims this was the first time anyone ever informed her of the mass on her kidney.

On April 29, Berry was diagnosed with metastatic renal cell carcinoma through a CT biopsy at the University Hospitals. In November 2016, Berry underwent a partial right nephrectomy to treat her renal cancer. Although the surgery was initially successful, a spinal tumor was discovered in July 2017. Berry underwent surgery, chemotherapy, and radiation treatment. Berry passed away on May 22, 2019, from renal cell carcinoma with metastasis to the bone.

Prior to her death, Berry sued Dr. Grossmann, Mercy Surgical Affiliates, and Catholic Health Initiatives Iowa, Corp. d/b/a Mercy Medical Center on April 10, 2018. She asserted medical malpractice claims related to Dr. Grossmann's alleged failure to disclose information about the kidney abnormalities revealed on the CT scans to Berry or her primary care physician, preventing Berry from seeking further testing and care. Her expert opined that even though the kidney mass was an incidental finding to Berry's treatment for colitis, the standard of care required Dr. Grossmann to inform Berry of the mass as well as follow up directly with Berry's primary care physician, neither of which was documented in Dr. Grossmann's notes. Berry alleged that having ordered the CT scans, Dr. Grossmann was responsible for all findings, including findings incidental to his treatment. Berry also alleged that Dr. Grossmann's failure to inform her about the nature of her medical issues amounted to fraudulent

misrepresentations. Following Berry's death in May 2019, her daughters, as coadministrators of her estate, were substituted as plaintiffs.

The defendants moved for summary judgment on the basis that the claims were precluded by the six-year statute of repose for medical malpractice claims. *See* Iowa Code § 614.1(9)(*a*). The estate argued that Dr. Grossmann's actions amounted to fraudulent concealment, such that the defendants should be estopped from raising the statute of repose defense. The district court granted the defendants' motion on July 17, 2020, rejecting the plaintiffs' reliance on fraudulent concealment to avoid the six-year bar to its claims. The estate appealed, and we transferred the case to the court of appeals. The court of appeals reversed the district court's grant of summary judgment, holding there was a genuine issue of material fact concerning whether Dr. Grossmann's fraudulent concealment precluded the medical professionals' statute of repose defense. We granted the defendants' application for further review.

## II.

We review a district court's grant of summary judgment for correction of errors of law. *Skadburg v. Gately*, 911 N.W.2d 786, 791 (Iowa 2018). Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Christy v. Miulli*, 692 N.W.2d 694, 699 (Iowa 2005). The moving party must show an absence of a genuine issue of material fact. *Skadburg*, 911 N.W.2d at 791. We view the facts in the record in the light most favorable to the nonmoving party, and we draw every legitimate inference in their favor. *Id.*

III.

The defendants contend that the court of appeals decision effectively eliminated application of the statute of repose in any failure to disclose case where subsequent treatment by the same providers exists. The defendants ask us to uphold the district court's order, contending that this case is barred by the statute of repose because it was filed nearly nine years after the care in question. Berry's estate argues that the court of appeals correctly held that a jury could conclude from the evidence that Dr. Grossmann was guilty of concealing Berry's kidney cyst, which would estop the defendants from raising the statute of repose defense. Resolution of this case turns on a proper application of the fraudulent concealment doctrine.

This case involves the application of a statute of repose, to be distinguished from a statute of limitations. A statute of limitations governs how much time a plaintiff has to bring a cause of action after it accrues. An action accrues when the plaintiff is injured, or in some cases, when she discovers or reasonably should have discovered she has been injured. Conversely, a statute of repose governs how long a potential defendant is subject to liability for his actions. So a statute of repose runs from the time of the defendant's action, regardless of when the injury is incurred or discovered, and may cut off a cause of action before it has accrued or even before there has been an injury. *See, e.g., Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408–09 (Iowa 1993) (holding that the fifteen-year statute of repose in section 614.1(11) related to improvements to real property precluded an action against

an architect for negligently designing a building constructed in 1971 that collapsed in 1991 even though there was no injury, and therefore no legal cause of action, until the building's collapse); *see also Albrecht v. Gen. Motors Corp.*, 648 N.W.2d 87, 91–94 (Iowa 2002) (holding that the fifteen-year statute of repose in section 614.1(2A) precluded products liability claims against General Motors premised on a defective seat belt that contributed to a minor's injuries in a car accident brought more than fifteen years after the car was purchased).

Iowa Code section 614.1(9) contains both a statute of limitations and a statute of repose for medical malpractice claims. A plaintiff can bring a medical malpractice action within two years from the time she knows, or through reasonable diligence should know, of the injury or death for which she claims damages. Iowa Code § 614.1(9)(*a*). This is a statute of limitations, measured from the accrual of the plaintiff's cause of action. If this was the only statutory limitation, Berry's claims would arguably have been timely since she filed this lawsuit within two years of being told about the mass on her kidney.

But section 614.1(9)(*a*) goes on to provide: "in no event shall any action be brought more than six years after the date on which occurred the act or omission or occurrence alleged in the action to have been the cause of the injury or death," with an exception not relevant here. Iowa Code § 614.1(9)(*a*). This is a statute of repose, measured from the time of the defendant's actions. *See Est. of Anderson v. Iowa Dermatology Clinic, PLC*, 819 N.W.2d 408, 414 (Iowa 2012) ("Unlike the statute of limitations, under which a claim accrues for injuries caused by medical negligence when the plaintiff knew, or through the use of reasonable diligence

should have known, of the injury, a statute of repose runs from the occurrence of the act causing the injury."). The six-year bar provides "an outside limitation for all lawsuits, even though the injury had not been discovered." *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 455 (Iowa 2008). While the statute of repose can have harsh consequences by cutting off a cause of action before it is discovered or even arises, it "reflect[s] the legislative conclusion that a point in time arrives beyond which a potential defendant should be immune from liability for past conduct." *Est. of Anderson*, 819 N.W.2d at 419 (quoting *Albrecht*, 648 N.W.2d at 91); *see also Schlote v. Dawson*, 676 N.W.2d 187, 194 (Iowa 2004) (recognizing the statute "severely restricts the rights of unsuspecting patients who may be injured because of unnecessary and excessive surgery" but "it is up to the legislature and not this court to address this problem"); *Albrecht*, 648 N.W.2d at 94 ("When a period of repose expires and bars a claim before it accrues (as occurred here), there is nothing a potential claimant—adult or minor—can do to avoid the bar.").

The statute of repose is an affirmative defense to a malpractice claim. And despite its rigid bar, certain equitable principles may prevent, or estop, a defendant from raising the defense. One such equitable doctrine, fraudulent concealment, arises "when by his own fraud [the defendant] has prevented the other party from seeking redress within" the applicable statutory period. *Est. of Anderson*, 819 N.W.2d at 414 (quoting *Christy*, 692 N.W.2d at 702) (noting that the doctrine of fraudulent concealment has been part of our jurisprudence for over a century and survived codification of the statute of repose in section

614.1(9)). Fraudulent concealment "is a form of equitable estoppel that . . . allows a plaintiff to pursue a claim that would be otherwise time barred under the statute of repose." *Id.* As we explained in *Christy v. Miulli,* "equitable estoppel has nothing to do with the running of the limitations period or the discovery rule; it simply precludes a defendant from asserting the statute as a defense when it would be inequitable to permit the defendant to do so." 692 N.W.2d at 701.

A plaintiff seeking to estop a defendant from raising a statute of repose defense must prove four things: "(1) The defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his prejudice." *Id.* at 702 (quoting *Meier v. Alfa–Laval, Inc.,* 454 N.W.2d 576, 578–79 (Iowa 1990)). The party alleging fraudulent concealment has the heavy burden to prove each of the elements by "a clear and convincing preponderance of the evidence." *Id.*

Equitable estoppel is not premised on the fact that the defendant has harmed the plaintiff but on the fact that—having harmed the plaintiff—the defendant also concealed the existence of a cause of action. Recognizing this distinction, fundamental "to the first element, a party relying on the doctrine of fraudulent concealment must prove the defendant did some affirmative act to conceal the plaintiff's cause of action independent of and subsequent to the liability-producing conduct." *Id.* The existence of a fiduciary duty, such as that between a physician and his patient, "relaxes the requirement of *affirmative*

concealment," *Est. of Anderson*, 819 N.W.2d at 415 (emphasis added), such that silence can supply the concealment, but "the act of concealment must [still] be independent of and subsequent to the original wrongdoing establishing liability." *Skadburg*, 911 N.W.2d at 798.

A review of our cases demonstrates the distinction between an underlying liability-producing act and a subsequent, independent act of concealment. In *Christy*, a doctor who caused a brain bleed during a biopsy procedure reported in the patient's medical records that the procedure was performed without complications and told the patient's spouse the bleed occurred away from the biopsy site, suggesting it was caused by an unrelated infection. 692 N.W.2d at 698–99. The acts of concealment—misleading the wife about the location of the bleed relative to the biopsy and recording the procedure was completed without complications in the medical records—were independent and subsequent to the liability-creating act of negligently performing the biopsy. *Id.* at 700–04. In *Skadburg v. Gately*, an attorney erroneously told his client, who was the administrator of her mother's estate, to use proceeds from life insurance and 401(k) accounts to pay the estate's debts even though those assets were exempt and the estate's debts exceeded its assets. 911 N.W.2d at 790. The attorney's silence in response to the client's later communications lamenting that she had used exempt assets to pay the estate's debts satisfied the requirement for an act of concealment that was independent and subsequent to the underlying negligence of improperly advising the client to use exempt assets to pay the estate's debts. *Id.* at 799–800.

On the other hand, where a physician unnecessarily removed a patient's voice box and failed to tell the patient that other less intrusive treatments were available, we held that "failure to make those disclosures lies at the heart of the Schlotes' claims" so that the "failure was not an independent, subsequent act of concealment." *Schlote*, 676 N.W.2d at 195. In *Van Overbeke v. Youberg*, an obstetrician failed to give RHoGAM to a pregnant patient who was RH negative to prevent blood sensitization before delivering her baby. 540 N.W.2d 273, 274–75 (Iowa 1995), *abrogated on other grounds by Christy*, 692 N.W.2d at 701–02. In the patient's subsequent medical malpractice action, we explained that where "the doctor's failure to disclose to the plaintiff that she needed the RHoGAM injection lies at the heart of her claim," the "[f]ailure to disclose that need, as a ground of liability, cannot [also] be the basis for fraudulent concealment." *Id.* at 276–77. "If it could be, there would effectively be no statute of limitations for negligent failure to inform a patient." *Id.* at 277. This reasoning follows from cases addressing the application of fraudulent concealment to a fraud claim. Absent "evidence of false or misleading conduct by [the defendant], other than the alleged fraud itself, that dissuaded the [plaintiffs] from investigating a possible claim or that caused them to refrain from filing suit," fraudulent concealment does not preclude a statute of limitations defense to a fraud claim. *Hallett Const. Co. v. Meister*, 713 N.W.2d 225, 231–32 (Iowa 2006).

This case follows the pattern of *Schlote* and *Van Overbeke* rather than *Christy* and *Skadburg.* The liability-producing conduct was Dr. Grossmann's alleged failure to disclose to Berry the concerning findings on her CT scan and

to inform her primary care physician about the recommendation for further evaluation of the kidney mass. But the plaintiffs then rely on these same acts—Dr. Grossmann's failure to tell Berry about the mass when she returned to the hospital on October 1 or saw him in his office on October 6 as well as Dr. Grossmann's October 6 letter to Berry's primary care physician—as his acts of concealment. The court of appeals concluded these separate opportunities to disclose the kidney mass provided the necessary temporal separation between the initial failure to disclose the Mercy radiologist's October 1 recommendation for further evaluation of the mass, and the later concealment by Dr. Grossmann after gaining actual knowledge of the mass but concealing the information from Berry in subsequent direct interactions. The court of appeals similarly determined that Dr. Grossmann's October 6 letter to Berry's primary care physician constituted a further act of concealment.

The court of appeals' focus on the temporal separation overlooks the requirement that the concealment also be independent of the liability-producing act. Fraudulent concealment comes into play when a defendant conceals a cause of action against him. That Dr. Grossmann had multiple opportunities to disclose the kidney mass just means he acted negligently on successive occasions—a point made by Berry's expert. This is not like *Skadburg*, where the attorney first gave his client bad advice about paying the estate's debts with exempt assets and then stood silently by when she lamented the loss of funds from the estate. *See* 911 N.W.2d at 799–800. The silence in *Skadburg* was independent of the prior negligent advice. Rather, this is like *Schlote v. Dawson,*

where "failure to make those disclosures lies at the heart of [Berry's] claims; such failure was not an independent, subsequent act of concealment." 676 N.W.2d at 195; *see also Van Overbeke*, 540 N.W.2d at 276–77 ("Failure to disclose that need, as a ground of liability, cannot [also] be the basis for fraudulent concealment.").

Berry is essentially asserting a substantive claim of fraudulent concealment premised on a duty by Dr. Grossmann to disclose the incidental results of her CT scan. But she brought her claim more than six years after Dr. Grossmann failed to make that disclosure. To allow her claim to go forward would effectively eviscerate the statute of repose for claims of failure to inform a patient. *See Van Overbeke*, 540 N.W.2d at 276–77. To avoid the statute of repose, Berry must identify some act of concealment that is independent of the duty to disclose the CT scan results. Unable to do so, Berry cannot rely on fraudulent concealment to estop defendants from asserting the six-year statute of repose as a defense to Berry's claims.

Berry brought her claims more than six years after the defendants' conduct, and the claims are barred by the statute of repose. *See* Iowa Code § 614.1(9)(*a*). The district court properly granted summary judgment, and the court of appeals erred in reversing.

IV.

For the foregoing reasons, we vacate the court of appeals decision and affirm the district court's grant of summary judgment in favor of the defendants.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**