# IN THE COURT OF APPEALS OF IOWA

No. 18-0172
Filed March 6, 2019

**DAVID A. WILD,**
    Plaintiff-Appellant,

**vs.**

**BRUCE A. WILLEY, BRUCE A. WILLEY, P.C., and WILLEY O'BRIEN, L.C.,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Linn County, Sean McPartland, Judge.

David Wild appeals district court rulings granting summary judgment in favor of defendants. **AFFIRMED.**

Marc S. Harding of Harding Law Office, Des Moines, for appellant.

Matthew G. Novak and Bradley J. Kaspar of Pickens, Barnes & Abernathy, Cedar Rapids, for appellees.

Heard by Doyle, P.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

David Wild appeals district court rulings granting summary judgment in favor of defendants on his claims of legal malpractice, breach of a business partner's fiduciary duty, fraudulent misrepresentation, and equitable indemnity. As to his legal-malpractice claims, Wild argues expert testimony is not required because Willey's conduct was so clearly negligent that it can be recognized by laypersons or, alternatively, the court should have granted him additional time to designate an expert. As to the court's grant of summary judgment on his claims of breach of fiduciary duty and fraudulent misrepresentation on statute-of-limitations grounds, Wild argues he commenced his action within the limitations period and Willey should be equitably estopped from relying on the statute of limitations. Finally, Wild challenges the district court's grant of summary judgment on his equitable-indemnity claim after concluding Willey did not owe him an independent duty.

## I.      Background Facts and Proceedings[1]

Wild is an experienced businessman, being self employed as a project developer since 1975. Bruce Willey is an Iowa attorney who has provided Wild legal services in personal and business matters. In 2007, Wild signed a consent and waiver concerning conflicts of interests arising in relation to Willey entering into business transactions with Wild.

The transactions resulting in this litigation occurred in 2008. Catalyst Resource Group, LLC (Catalyst) is owned by two other entities, Braveheart Equity

---

[1] Although the following findings include information from each of the three summary-judgment records made in the district court, we limit our review of each of the court's rulings to the record before it at the time it entered each of the successive summary-judgment rulings.

Holdings, LLC (Braveheart) and Orion's Pride, LLC (Orion). Wild is the sole member of Braveheart; Willey is the sole member of Orion. Willey was both a personal attorney to Wild and an attorney for Catalyst. In these capacities, Willey provided legal services to Wild and Catalyst in relation to negotiating, drafting, and executing third-party loan agreements.

In May 2008, Willey negotiated a loan agreement between Catalyst and Laurus Technologies, Inc. (Laurus), under which Catalyst would borrow $500,000 from Laurus. Willey negotiated a similar arrangement between Catalyst and Midwest S.N. Investors, LLC (Midwest), for a loan in the amount of $200,000. The intent was for Catalyst to transfer the borrowed funds to third parties to secure high-value assets, which Catalyst could use as collateral for even larger loans in the future. Willey insisted that Wild agree to the loans and provide personal guarantees as security. Willey assured Wild the funds provided to third parties would be secured by collateral as highly rated as United States treasury bonds. Wild executed promissory notes and personal guarantees in relation to both loans.

After Catalyst's receipt of the funds, Catalyst—at Willey's direction—loaned $500,000 to a third party but did not receive collateral in return for the loan. The $200,000 loan from Midwest went unaccounted for. By approximately June 2008, not receiving any funds and being aware the third-party loan was unsecured, Wild knew there was a problem. In his deposition, Wild stated the reason he did not sue Willey at this time "was because he was a friend, he was a partner, and he was my attorney, personally and corporately." Wild further acknowledged in his deposition that he was aware he could have filed suit against Willey in 2008, but he waited to do so because Laurus was willing to work with Catalyst.

The third party never repaid the loan from Catalyst. Consequently, Catalyst had insufficient funds to repay the Laurus loan. The note securing the loan was extended several times over the next few years, during which Willey assured Wild the loan to the third party would be secured by collateral and the third party would perform. Laurus assigned its note (with interest) and the personal guarantee to a third-party creditor. The creditor obtained judgment against Catalyst in 2013. In April 2014, judgment was granted against Wild on his personal guarantee in the amount of $827,753.34.

During the foregoing loan transactions, Willey was acting as an attorney for Laurus and was a close friend with, and acting as an attorney for, one of its officers. Willey was also acting as an attorney for Midwest and as an attorney and accountant for one of its members.

In June 2015, Wild filed a petition at law against defendants forwarding claims of legal malpractice,[2] breach of a business partner's fiduciary duty, fraudulent misrepresentation, and equitable indemnity. Defendants answered on March 23, 2016, denying all claims and asserting defenses. In May, a trial scheduling and discovery plan was entered requiring Wild to designate his expert witnesses by September 19. *See* Iowa Code § 668.11(1)(a) (2015) (requiring plaintiffs in professional-liability cases to designate experts within 180 days of

---

[2] The manner in which the claims of legal malpractice were alleged was somewhat confusing but appears to have included separate claims that Willey was negligent in providing legal services under a conflict of interest and the breaching of a fiduciary duty by an attorney. At a hearing, Wild's counsel confirmed his legal malpractice claim included two "subcategories" concerning "conflict of interest and breach of fiduciary duty as a lawyer."

defendant's answer). Wild did not designate an expert or move for an extension before or after the deadline.

On November 3, defendants moved for summary judgment on all claims, arguing such claims require expert testimony concerning the standard of care and noting Wild had failed to timely designate any expert witnesses. Wild resisted, arguing expert testimony is unnecessary because a layperson could easily recognize Willey failed to meet a reasonable standard of care. At a hearing on the motion, Wild's counsel related the failure to timely designate an expert was a result of communication issues with an expert and a "computer meltdown" that affected counsel's calendared deadlines. Counsel orally moved for an extension of time to designate an expert witness. Counsel alternatively repeated his argument that the presentation of expert testimony was unnecessary.

Upon questioning from the court, counsel advised his "computer meltdown" occurred in July or August, agreed the deadline to designate expert witnesses was September 19, and conceded he still had access to the court's electronic filing system and could have utilized it to ascertain the deadline following the computer issues. The court went on to point out that defendants' motion for summary judgment for failure to designate was filed in early November, yet Wild made no request for an extension until the hearing on the motion, in January 2017. Wild's counsel agreed with the court that his failure to move for an extension in response to the summary-judgment motion was not a result of his previous computer issues. In response to the court's questioning about whether a layperson could understand the nature of Wild's claims due to the "complicated set of business transactions that are involved," Wild's counsel stated his opinion that some matters are "pretty

clear, straightforward" while other matters would even be "difficult for lawyers to understand."

The court denied Wild's motion for an extension of time to designate experts and granted summary judgment in favor of defendants on Wild's legal-malpractice claims, concluding "the issues here are not so plain and obvious as to fall into the exceptional case not requiring expert testimony." The court explained "the transactions described were matters involving highly technical business transactions" and "Willey's failure to comply with his duties related to conflicts of interest or breaches of fiduciary duties as an attorney . . . would be outside the understanding of a lay person." The court denied defendants' motion as to Wild's claims of breach of fiduciary duty as a business partner, fraudulent misrepresentation, and equitable indemnity. As a result of the ambiguous nature in which the surviving claims were pled, the court directed Wild "to recast and replead the surviving claims . . . to better reflect the nature of such remaining claims."

Wild filed his amended petition in March, restating his surviving claims, and naming only Willey as a defendant. In its answer, Willey asserted numerous defenses, including a statute-of-limitations defense. In April, Willey filed a second motion for summary judgment. Willey argued the breach-of-fiduciary-duty and fraudulent-misrepresentation claims were time barred by the statute of limitations contained in Iowa Code section 614.1(4). As to the equitable-indemnity claim, Willey argued the claim had yet to accrue, because Wild had yet to make payment on the judgment against him. In October, following a hearing, the court granted summary judgment in favor of Willey on the first two claims, concluding the claims

accrued in 2008 and Wild's initial petition, filed in 2015, was not filed within the five-year limitations period.[3] As to the equitable-indemnity claim, the court concluded the 2014 entry of judgment against Wild was sufficient to accrue the claim.

In November, Willey filed a third motion for summary judgment as to the remaining claim, arguing, among other things, Wild could not establish Willey owed him an independent duty, a necessary element of the claim. Wild resisted, arguing Willey owed him fiduciary duties of loyalty and care as business partners. Willey responded that a breach of professional duties must be established by expert testimony and Willey was unable to meet his burden in the absence thereof. The court found that the transactions underlying the claims related to a business not directly owned by either Wild or Willey, Catalyst, but which was instead owned by two other business entities, Braveheart and Orion, which were in turn separately owned by Wild and Willey. In determining whether Willey owed Wild an independent duty in relation to Catalyst, the court considered the nature of the relationship and found the parties, both experienced businessmen, structured their ownership of the business through shell entities to shield them from personal liability. Based on the nature of the relationship and notions of fairness, the court concluded, as a matter of law, Willey did not owe Wild any independent duty in relation to the affairs of Catalyst. The court therefore granted summary judgment in favor of Willey on the equitable-indemnity claim and dismissed the case. This appeal followed.

---

[3] The parties agreed that the amended petition related back to the time Wild filed his original petition.

## II.    Standard of Review

Appellate review of summary-judgment rulings is for correction of errors at law.  *Kunde v. Estate of Bowman*, 920 N.W.2d 803, 807 (Iowa 2018).  "A motion for summary judgment is appropriately granted when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'"  *Behm v. City of Cedar Rapids*, ___ N.W.2d ___, ___, 2019 WL 320511, at *9 (Iowa 2019) (ellipsis in original) (quoting Iowa R. Civ. P. 1.981(3)).  "An issue is 'genuine' if the evidence in the record 'is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Honomichl v. Valley View Swine, LLC*, 914 N.W.2d 223, 230 (Iowa 2018) (quoting *Nelson v. Lindaman*, 867 N.W.2d 1, 6 (Iowa 2015)).  The record is viewed in the light most favorable to the nonmoving party and that party is granted all reasonable inferences that can be drawn from the record.  *Id.*  "Summary judgment is appropriate if the only conflict concerns the legal consequences of undisputed facts."  *Id.* (quoting *Plowman*, 896 N.W.2d at 398).

## III.   Analysis

Wild appeals the district court's grant of summary judgment as to each of his claims.  We will consider his arguments in turn.

### A.    Legal Malpractice

As to his legal-malpractice claims, Wild argues expert testimony is not required because Willey's conduct was so clearly negligent that it can be recognized by laypersons or, alternatively, the court should have granted him additional time to designate an expert.

### 1.    Additional Time to Designate an Expert

We first consider Wild's argument that he should have been granted additional time to designate an expert.  He argues he demonstrated "good cause" for an extension and the court abused its discretion in denying the request.  He points to communication issues with an expert, counsel's computer issues, and his presentation of an alternate expert at the summary-judgment hearing.

We review a denial of a motion to extend expert-witness deadlines for an abuse of discretion, our most deferential standard of review.  *See Hill v. McCartney*, 590 N.W.2d 52, 54 (Iowa Ct. App. 1998); *see also State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017).  "Trial courts have broad discretion in ruling on whether to extend the time allowed for parties to designate expert witnesses under [section] 668.11, and the exercise of that discretion will not be disturbed unless it was exercised on clearly untenable grounds or to an extent clearly unreasonable." *Hill*, 590 N.W.2d at 54–55.

Plaintiffs in professional-liability cases are required to designate their experts within a certain timeframe.  *See* Iowa Code § 668.11(1)(a).  If a party fails to timely designate an expert, "the expert shall be prohibited from testifying in the action unless leave for the expert's testimony is given by the court for good cause shown."  *Id.* § 668.11(2).  "Good cause under section 668.11 must be 'more than an excuse, a plea, apology, extenuation, or some justification for the resulting effect.'" *Thomas v. Fellows*, 456 N.W.2d 170, 172 (Iowa 1990) (quoting *Donovan v. State*, 445 N.W.2d 763, 766 (Iowa 1989)).

A May 2016 trial-scheduling order required Wild to designate his experts by September 19.  Wild's counsel initially experienced communication issues with an

expert. Then, in July or August, counsel's firm experienced computer difficulties, which apparently affected the firm's electronic calendar and resulted in the deadline, and others, being wiped from the system. Yet, counsel was aware of the issue and the pending status of the matter, and he had access to the trial-scheduling order through the court's electronic filing system. Then, in November, defendants filed their summary-judgment motion, specifically referencing Wild's failure to designate. Still, no motion for an extension under section 668.11(2) was made. It was not until more than two months later, at the summary-judgment hearing in January 2017, that an oral request for additional time to designate an expert was made. No excuse was provided for the failure to promptly move for an extension in response to defendants' motion for summary judgment. Further, discovery of any kind had yet to be conducted, and trial was scheduled to commence in a matter of months.

Wild's principal rationale for good cause, communication and computer issues, might have been sufficient grounds for an extension prior to the expiration of the deadline. *Compare* Iowa Code § 668.11(1)(a) (allowing for extension of 180-day deadline), *with id.* § 668.11(2) (allowing for extension after non-compliance); *see also Hantsbarger v. Coffin*, 501 N.W.2d 501, 505 (Iowa 1993) (referencing the distinction). But here, Wild failed to comply with the deadline and a request for an extension was not made for several months thereafter. *Compare Donovan*, 445 N.W.2d at 766 (finding no abuse of discretion in denial of extension request where "the time to designate witnesses had run several months" before the request), *with Hantsbarger*, 590 N.W.2d at (finding abuse of discretion in denial of extension request where "a complete designation was only delinquent about one week").

Under the circumstances of this case, we are unable to say the district court exercised its discretion on clearly untenable grounds or to an extent clearly unreasonable. Finding no abuse of discretion, we affirm the denial of the motion for additional time to designate expert witnesses.

### 2.    *Expert-Testimony Requirement*

We turn to Wild's argument that expert testimony is not required because Willey's conduct was so clearly negligent that it can be recognized by laypersons.

> To establish a prima facie claim for legal malpractice, a plaintiff must produce substantial evidence demonstrating: (1) an attorney-client relationship existed giving rise to a duty; (2) the attorney violated or breached the duty, either by an overt act or a failure to act; (3) the breach of duty proximately caused injury to the client; and (4) the client did sustain an actual injury, loss, or damage.

*Stender v. Blessum*, 897 N.W.2d 491, 502 (Iowa 2017). "[E]xpert testimony on the standard of care due to a client is normally required for a legal malpractice claim."

*Id.*

> [U]nless the plaintiff's claim is based on standards of care and professionalism understood and expected by laypersons, the plaintiff will have to retain an expert to go forward. Generally, we require expert testimony on the standard of care in legal malpractice actions. This is because the measure for the standard of care required is that of a similarly situated ordinary lawyer.

*Id.* at 505 (citations omitted). The expert-testimony requirement is generally only lifted where "the attorney's behavior has been overt and obvious to a layperson." *Id.* at 505 n.8.

Wild generally points to Willey's various conflicts of interest existing at the time he advised him in relation to the 2008 loan arrangements and his failures to protect Wild and his interests in relation to the same. Specifically, he argues "utterly failing to ensure that collateral was provided in exchange for the $500,000

is a clear failure of the most basic legal representation," there was "such a clear and obvious conflict of interest that no expert testimony is needed to explicate it," and the failure to "account for the whereabouts of . . . the Midwest loan" amounts to negligence that "is so clear, present and obvious that any layperson could recognize it as such."

We agree with Wild that Willey's behavior was contrary to our rules of professional conduct and a layperson could likely infer the same. However, although a violation of the rules of professional conduct may constitute "some evidence of negligence," our rules do not dictate the standard of care for civil liability in legal-malpractice actions. *See id.* at 502, 504. Here, without expert testimony, a lay jury would be required to blindly determine whether Willey's performance in the 2008 loan arrangements fell outside the ordinary skill, prudence, or diligence expected of a similarly situated, ordinary attorney. This would require an understanding of both the technicalities of, and ordinary practices involved with—to name a few—loan agreements, promissory notes, secured transactions, personal guarantees, and complex business dealings. It would also require an understanding of a lawyer's duty of care as to conflicts of interest, not to mention the ability to navigate the additional wrinkle of Wild's consent and waiver to some conflicts of interest. A layperson would also be faced with the dichotomy between negligence and mere poor business decisions.

The question is whether, without expert testimony, a layperson could be expected to understand the standard of care of an attorney in this complicated set of facts. Agreeing with counsel's concession that some of this would be "difficult for lawyers to understand," we answer that question in the negative, and we affirm

the court's finding that Wild's legal-malpractice claims cannot proceed without expert testimony.

Having found the court did not abuse its discretion in denying Wild's request for leave to designate expert witnesses and Wild's legal-malpractice claims cannot proceed without expert testimony, we affirm the district court's grant of summary judgment on Wild's legal-malpractice claims.

B.      Breach of Fiduciary Duty and Fraudulent Misrepresentation

Next, Wild challenges the district court's grant of summary judgment on his claims of breach of fiduciary duty and fraudulent misrepresentation on statute-of-limitations grounds.  He argues he commenced his action within the limitations period and Willey should be equitably estopped from relying on the statute of limitations.

The parties agree the foregoing claims are subject to a five-year statute of limitations.  *See* Iowa Code § 614.1(4); *Shams v. Hassan*, 905 N.W.2d 158, 164 (Iowa 2017) (breach of fiduciary duty); *Hallet Constr. Co. v. Meister*, 713 N.W.2d 225, 230 (Iowa 2006) (fraudulent misrepresentation).  Both claims are subject to the discovery rule for statute-of-limitations purposes.  *Shams*, 905 N.W.2d at 165; *see Meister*, 713 N.W.2d at 230–31.  Our inquiry does not focus on when the conduct underlying the causes of action occurred; rather, the question is when the causes of action accrued.  *Skadburg v. Gately*, 911 N.W.2d 786, 792 (Iowa 2018).  Wild filed his initial petition on June 5, 2015.  If the cause of action accrued more than five years before this date, we must address whether the discovery rule tolls the limitations period.  *See id.*

No cause of action accrues until the defendant's act or omission produces actual injury to the plaintiff's interest. *See id.*; *Meister*, 713 N.W.2d at 230 ("Generally, a claim accrues when 'the wrongful act produces injury to the claimant.'" (quoting *K&W Elec., Inc. v. State*, 712 N.W.2d 107, 115 (Iowa 2006))); *see also Asa-Brandt, Inc. v. ADM Inv'r Servs., Inc.*, 344 F.3d 738, 744 (8th Cir. 2003) (noting fiduciary-duty claim under Iowa law requires damage to plaintiff); *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 687 (Iowa 2010) (requiring, as an element of fraudulent misrepresentation, "injury and damage"). The plaintiff must suffer actual loss, not speculative or future harm. S*kadburg*, 911 N.W.2d at 792.

The district court concluded Wild's fraudulent-misrepresentation and breach-of-fiduciary-duty claims accrued in 2008 and, because Wild had knowledge of the claims, the discovery rule did not apply to toll the statute of limitations. As to the fiduciary-duty claim, the recast petition alleged Willey breached his fiduciary duties to Wild in relation to his handling of the May 2008 loan transactions and thereafter by concealing facts and making false statements to Wild. As to the fraudulent-misrepresentation claim, Wild alleged Willey falsely represented the third-party loan was secured by collateral and, through July 2013, falsely represented the third parties would perform. However, the record is undisputed that, by mid-2008, Wild knew the third-party loan was unsecured and that the third parties failed to perform. It is also undisputed that Wild knew he could have filed suit against Willey at this time but declined to do so "because he was a friend, he was a partner, and he was my attorney, personally and corporately."

Furthermore, the funds were wired to the third party on or about May 9, 2008. The promissory note signed by the third party in relation to the loan required the third party to repay Catalyst on or before thirty "banking . . . days" from the date of receipt. It is undisputed the loan was at all times unsecured and the third party defaulted under the note by failing to meet its repayment obligation within thirty days, both circumstances of which Wild was aware in mid-2008. Although "insecurity alone does not constitute an actual injury," as it is entirely possible that the third party still could have met its obligation under the note, an actual injury does arise when the payments under the loan arrangement are discontinued. *See Vossoughi v. Polaschek*, 859 N.W.2d 643, 652–54 (Iowa 2015). Here, the actual injury to Wild arose at the time the third party defaulted under the loan arrangement, in June 2008. The facts that Wild and Willey remained hopeful that the third party would perform after default, they worked toward the same, and Laurus allowed extensions to Catalyst in repaying its loan have no bearing on the question of when an actual injury occurred.

As such, the claims against Willey flowing from his conduct in relation to the May 2008 loan arrangements accrued in June 2008, when the third party defaulted, causing an actual, non-speculative injury. It is also undisputed that at this time Wild knew there was a problem with the loan arrangements and he had actionable claims against Willey, but he declined to pursue them at that time. As such, the discovery rule does not apply to toll the statute of limitations. *See Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985) ("[T]he duty to investigate does not depend on exact knowledge of the nature of the problem that caused the injury. It is sufficient that the person be aware that a problem existed.").

Finally, Wild argues Willey should be equitably estopped from relying upon the statute of limitations. Although Wild presented a brief equitable-estoppel argument to the district court, the district court did not expressly rule upon it, and Wild did not request a ruling on the argument. Consequently, error has not been preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal."). In any event, a fraudulent concealment can only estop a party from asserting a statute-of-limitations defense where a plaintiff shows by a clear and convincing preponderance of the evidence that:

> (1) the defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representations; and (4) the plaintiff did in fact rely upon such representations to his or her prejudice.

*Skadburg*, 911 N.W.2d at 798 (altered for readability) (quoting *Christy v. Miulli*, 692 N.W.2d 694, 702 (Iowa 2005)). Upon the undisputed evidence that Wild knew in 2008 of the true state of facts and that he had actionable claims against Willey, we alternatively conclude the doctrine of estoppel for fraudulent concealment is inapplicable.

We affirm the district court's grant of summary judgment in favor of Willey on Wild's claims of fraudulent misrepresentation and breach of fiduciary duty.

C. Equitable Indemnity

Finally, Wild challenges the district court's grant of summary judgment on his equitable-indemnity claim after concluding Willey did not owe him an independent duty concerning their business dealings through Catalyst.

The doctrine of equitable indemnity "imposes indemnity due to the relationship of the parties and the underlying loss" in a noncontractual relationship. *Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 762 N.W.2d 463, 471 (Iowa 2009). This "is a murky doctrine based on notions of fairness and justice." *Id.* A branch of equitable-indemnity cases stands for the proposition "that fairness and justice require[] that the party primarily responsible for the underlying injury should bear the liability." *Id.* Another branch is "based upon an 'independent duty' between the indemnitor and the indemnitee." *Id.* The question in independent-duty cases "is whether there is some duty between the indemnitor and the indemnitee sufficient to impose indemnity on the indemnitor as a matter of law." *Id.* Although the independent-duty branch of equitable indemnity has not been developed in "great detail" under Iowa law, our supreme court has addressed it in relation to indemnification based on professional duties. *See id.* at 472–74; *see also Hansen v. Anderson, Wilmarth & Van Der Maaten*, 630 N.W.2d 818, 824–26 (Iowa 2001). However, the court indicated equitable-indemnity claims are not limited to professional-liability-type cases, but are applicable to situations in which a person has duties beyond general duties to other members of society. *See Wells Dairy*, 762 N.W.2d at 473 (indicating equitable-indemnity is available where a party's duties "are not the same as general duties owed to everyone by everybody, but are more specific and defined").

"To prove a claim for indemnity based on a breach of an independent duty, the party seeking indemnity must establish that the indemnitor owed a duty to the indemnitee." *Hansen*, 630 N.W.2d at 824. Here, Wild's recast claim of equitable indemnity did not rely on Willey's breach of professional duties as a lawyer.

Instead, the allegations focused on Willey's breach of fiduciary duties as a business partner. The court determined that, as a matter of law, Willey did not owe Wild any independent duty, fiduciary or otherwise, in relation to the affairs of Catalyst. "[T]he existence of a duty is generally a legal question and is thus susceptible to summary judgment." *Sabin v. Ackerman*, 846 N.W.2d 835, 839 (Iowa 2014).

The record shows Wild—an experienced, sophisticated, and savvy self-employed businessman since approximately 1975—and Willey—an experienced attorney versed in business dealings—structured Catalyst to shield each of them from personal liability in relation to the affairs of the business by structuring their ownership through two shell companies. Wild's counsel conceded as much to the district court. Upon our review of the summary-judgment record, we agree with the district court that how Wild and Willey structured these entities "is important in understanding the 'nature of the relationship' . . . and whether a duty should be imposed." The record shows, and the district court concluded, "Wild and Willey . . . knowingly formed these corporate structures, knowing these corporate structures would generally insulate each of them from personal liability" in relation to the affairs of Catalyst. Although Wild waived his insulation from liability by signing personal guarantees, Willey did not. Each of them were knowingly engaged together in a high-stakes risky business. Based on "the nature of the relationship"—which is underscored by the structure of the entities under which they operated—and "notions of fairness," we agree with the district court that, as a matter of law, Willey owed Wild no independent duty.

We affirm the district court's grant of summary judgment on Wild's equitable-indemnity claim.

**IV.    Conclusion**

We affirm the denial of Wild's motion for additional time to designate expert witnesses and the district court's grant of summary judgment on all claims.

**AFFIRMED.**